No. 15-10500

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA

*Plaintiff – Appellee,*

v.

SHAWN MCCORMACK,

*Defendant – Appellant.*

On Appeal from the United States District Court
for the Eastern District of California
D.C. No. 11-cr-00324-AWI
Honorable Anthony W. Ishii

## APPELLANT'S OPENING BRIEF

Johanna S. Schiavoni, Esq.
LAW OFFICE OF JOHANNA S. SCHIAVONI
3170 Fourth Avenue, Suite 250
San Diego, CA 92103
Tel: (619) 269-4046
Email: johanna@schiavoni-law.com

*Attorney for Appellant Shawn McCormack*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................1

STATEMENT OF JURISDICTION ...............................................2

SENTENCE AND CUSTODY STATUS ........................................3

STATEMENT OF THE ISSUES....................................................4

      A.    Did the district court abuse its discretion under Federal Rule of Evidence 403 in admitting at trial videos and images of child pornography alleged to have been produced by McCormack where McCormack was willing to stipulate to each offense element except the identity of the perpetrator?............................................................4

      B.    Did the district court abuse its discretion under Federal Rule of Evidence 404(b), 414 and 403 in admitting emails and chat room discussions unrelated to charged images and many of which were remote in time?.............................................4

      C.    Did the district court erroneously deny McCormack's motion for a judgment of acquittal as to Count 2, where the evidence was insufficient to establish that photographs depicting a sleeping child that is not aware of or involved in any activity depicted do not qualify as sexual exploitation of a child? ...............................4

      D.    Did the district court erroneously deny McCormack's motion for a judgment of acquittal as to the Count 6 charging kidnapping, where the evidence was insufficient to establish the use or involvement of any instrumentality or movement in or affecting interstate commerce?.....................4

E.    Did the district court abuse its discretion in imposing a substantively unreasonable sentence of life in prison on the kidnapping counts and 360 months the child pornography counts? .................4

STATEMENT OF CASE AND FACTS ........................................5

    A.    Course of Proceedings .............................................5

    B.    Pre-Trial *In Limine* Rulings ..................................5

    C.    Summary of Relevant Facts ....................................5

    D.    Defense Motion for Judgment of Acquittal ...........6

    E.    Jury Instructions and Verdict ..............................6

ARGUMENT .....................................................................6

I.    THE DISTRICT COURT ABUSED ITS DISCRETION BY PERMITTING THE GOVERNMENT TO INTRODUCE AT TRIAL AND PUBLISH TO THE JURY VIDEOS AND IMAGES OF CHILD PORNOGRAPHY ALLEGED TO HAVE BEEN PRODUCED BY MCCORMACK WHERE DEFENDANT WAS WILLING TO STIPULATE TO ALL OFFENSE ELEMENTS EXCEPT IDENTITY..6

    A.    Standard of Review ...............................................8

    B.    Elements of the Charged Offenses ........................9

    C.    The District Court Should Have Excluded the Actual Videos and Images of Child Pornography in Light of McCormack's Offered Stipulations ...10

        1.    Given McCormack's Offered Stipulations, the Images Were Not Necessary to Prove That the Videos and Images Constituted Actual Child Pornography ..........................10

2. The Videos and Images Were Not Necessary to Prove the McCormack's Identity............15

3. The Error in Admitting the Videos and Photos Involving Prepubescent Children Was Not Harmless ......................................18

II. THE DISTRICT COURT ABUSED ITS DISCRETION IN ADMITTING EXTENSIVE EMAILS AND CHAT ROOM LOGS NOT RELATED TO THE CHARGED IMAGES...............19

A. Standard of Review ..............................................20

B. Disputed Evidence ...............................................20

C. The Evidence Is Not Admissible Under Rule 404(b) ....................................................................22

1. Legal Rules Applicable to Admissibility of Evidence Under Rule 404(b)......................23

2. The Emails and Chat Room Discussions Unrelated to Charged Images Do Not Prove a Material Point in the Case ......................23

3. The Other Act Evidence Is Too Remote in Time...........................................................24

4. The Evidence Is Not Sufficient to Show That McCormack Committed the Other Act..............................................................25

5. The Other Act Evidence Is Similar to the Offense Charged Where Knowledge, Intent or Another Relevant Factor Is at Issue .....25

D. The Evidence Is Not Admissible Under Rule 414........................................................................26

iii

E. Even If Admissible Under Rule 404(b), the Evidence Did Not Pass the Rule 403 Balancing Under the *Glanzer* Factors ...................................28

    1. The Prior Acts Are Not Similar to the Acts Charged .......................................................29

    2. The Prior Acts Evidence Is Remote in Time from the Acts Charged ...............................29

    3. The Prior Acts Were Somewhat Frequent, But Not Similar...........................................29

    4. Intervening Circumstances Were Present.29

    5. The Evidence Was Not Necessary in Light of the Other Evidence Offered at Trial ......30

F. The Error in Admitting the Emails and Chats Was Not Harmless ...............................................33

III. THE DISTRICT COURT ERRED IN DENYING MCCORMACK'S RULE 29 MOTION FOR A JUDGMENT OF ACQUITTAL ON COUNTS 2 AND 6 ...................................................................................34

A. Standard of Review .............................................35

B. As to Count 2, the Evidence Was Insufficient Because the Charged Photographs Depicted a Sleeping Child Unaware of or Involved in Any Activity Depicted, and Thus Do Not Qualify as Sexual Exploitation of a Child.............................35

    1. Offense Facts...............................................35

    2. Elements of the Offense..............................36

    3. Analysis ......................................................38

iv

C. As to Count 6, Which Charged Kidnapping, the Evidence Was Insufficient to Establish the Use or Involvement of Any Instrumentality or Movement in or Affecting Interstate Commerce...................41

    1. Offense Facts...............................................41

    2. Elements of the Offense..............................42

IV. THE DISTRICT COURT'S SENTENCE OF LIFE IN PRISON ON COUNTS 5 AND 6, AND 360 MONTHS ON COUNTS 1 THROUGH 4, WAS SUBSTANTIVELY UNREASONABLE ......................49

A. Standard of Review .............................................49

B. A District Court's Sentence Is Substantively Unreasonable If It Reflects a Clear Error in the Court's Judgment in Weighing the Relevant Factors and Fails to Give Due Consideration to the Parsimony Principle .......................................49

C. The Life Sentence on Counts 5 and 6, and the 360-Month Sentence on Counts 1 Through 4, Was Substantively Unreasonable................................52

CONCLUSION..................................................................54

CERTIFICATE OF RELATED CASES .........................................56

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000) ........................................................................... 28, 30

*Gall v. United States*, 552 U.S. 38 (2007) ............................. 51

*Kimbrough v. United States*, 552 U.S. 85 (2007) ............ 50, 53

*Old Chief v. United States*, 519 U.S. 172 (1997) ...... 11, 12, 15

*Pepper v. United States*, 562 U.S. 476 (2011) ........................ 50

*United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009) ................................................................... 51, 52, 53

*United States v. Bancalari*, 110 F.3d 1425 (9th Cir. 1997) .. 43

*United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) ..... 50, 51

*United States v. Finley*, 726 F.3d 483 (3d Cir. 2013) ........... 39

*United States v. Ganoe*, 538 F.3d 1117 (9th Cir. 2008) ........................................................................... 13, 15, 31

*United States v. Garcia*, 854 F.2d 340 (9th Cir. 1988) ......... 46

*United States v. Gonzalez*, 528 F.3d 1207 (9th Cir. 2008) ... 35

*United States v. Guardia*, 135 F.3d 1326 (10th Cir. 1998) .. 29

*United States v. Haack*, 403 F.3d 997 (8th Cir. 2005) ......... 52

*United States v. Hardrick*, 766 F.3d 1051 (9th Cir. 2014) ...... ........................................................................... 31, 32

*United States v. Hitt*, 981 F.2d 422 (9th Cir. 1992) ............. 11

*United States v. James,* 253 Fed.Appx. 711, 2007 WL 3302103 (9th Cir. Nov. 8, 2007) (unpub. dispo.) .............. 28

*United States v. Johnson*, 132 F.3d 1279 (9th Cir.1997) ..... 23

*United States v. Krupa*, 658 F.3d 1174 (9th Cir. 2011).......... 7

*United States v. Lemay*, 260 F.3d 1018 (9th Cir. 2001) ................................................................................. 27, 30

*United States v. Levy*, 594 F.Supp.2d 427 (S.D. N.Y. 2009)  39

*United States v. Merino-Balderrama*, 146 F.3d 758 (9th Cir. 1998)...................... 8, 10, 11, 12, 15, 18, 19, 20, 33

*United States v. Norris*, 428 F.3d 907 (9th Cir. 2005).... 27, 40

*United States v. Olhovsky*, 562 F.3d 530 (3d Cir. 2009) ...... 52

*United States v. Ramirez-Robles*, 386 F.3d 1234 (9th Cir. 2004) ................................................................................. 24

*United States v. Redmond*, 803 F.2d 438 (9th Cir. 1986) .... 46

*United States v. Ressam*, 679 F.3d 1069 (9th Cir. 2012) ..... 49

*United States v. Sheldon*, 755 F.3d 1047 (9th Cir. 2014)....... 9

*United States v. Stern*, 391 Fed. Appx. 621, 2010 WL 3069710 (9th Cir. Aug. 4, 2010) (unpub. dispo.) .............. 28

*United States v. Thomas*, 92 Fed.Appx. 960, 2004 WL 765107 (4th Cir. Apr. 12, 2004) (unpub. dispo.) ........................... 40

*United States v. Toledo*, 985 F.2d 1462 (10th Cir. 1993) ..... 43

*United States v. Trujillo*, 713 F.3d 1003 (9th Cir. 2013) ..... 50

*United States v. Verduzco*, 373 F.3d 1022 (9th Cir. 2004) ....... ................................................................................. 23, 25

*United States v. Wesson*, 779 F.2d 1443 (9th Cir. 1986) ...... 46

vii

*United States v. Young*, 623 Fed. Appx. 863 (9th Cir. Aug. 19, 2015) (unpub. dispo.) ................................................. 27

## STATUTES

18 U.S.C. § 1201(a) ........................................................ 5, 43

18 U.S.C. § 1201(d) ............................................................ 43

18 U.S.C. § 1201(g) ....................................................... 5, 43

18 U.S.C. § 2251(a) .................................... 2, 5, 8, 9, 15, 39, 40

18 U.S.C. § 3231 ................................................................. 2

18 U.S.C. § 3553(a) ................................................. 50, 52, 53

18 U.S.C. § 3553(a)(1) ........................................................ 50

18 U.S.C. § 3553(a)(2) ................................................... 50, 51

18 U.S.C. § 3553(a)(3) ........................................................ 50

18 U.S.C. § 3553(a)(4) ........................................................ 50

18 U.S.C. § 3553(a)(5)) ....................................................... 50

18 U.S.C. § 3553(a)(6) ........................................................ 50

18 U.S.C. § 3553(a)(7) ........................................................ 50

28 U.S.C. § 1291 ................................................................. 3

## RULES

Fed. R. App. P. 4(b)(1)(A)(i) ..................................................... 3

Fed. R. Crim. Proc. 29(a) ....................................... 6, 34, 35, 39

Fed. R. Evid. 401 ................................................................ 23

Fed. R. Evid. 404(b) ......................... 1, 4, 19, 22, 23, 26, 28, 30

Fed. R. Evid. 404(b)(1) ........................................................ 22

Fed. R. Evid. 404(b)(2) ........................................................ 23

Fed. R. Evid. 403 ............................................................*passim*

Fed. R. Evid. 414 .................................. 1, 4, 19, 26, 27, 28, 29

Fed. R. Evid. 414(a) ............................................................ 26

## OTHER AUTHORITIES

http://www.bop.gov/inmateloc/Register # 37958-013 (last
    checked June 6, 2016). ...................................................... 3

**INTRODUCTION**

Appellant Shawn McCormack did not receive a fair trial. He was convicted on four counts of production of child pornography and two counts of kidnapping. McCormack was convicted, however, only after the district court abused its discretion under Federal Rule of Evidence 403 by permitting the government to introduce at trial and publish to the jury videos and images of child pornography alleged to have been produced and possessed by McCormack, despite that McCormack was willing to stipulate to all of the elements of the offense except that he was in fact the adult male perpetrator depicted in the videos and images. The trial court also abused its discretion in admitting pursuant to Federal Rule of Evidence 404(b) and 414 extensive evidence of uncharged acts relating to prior and subsequent child pornography offenses and sex offenses, where the evidence was not admissible and still should have been excluded under Rule 403's balancing test. The government fails to show that these errors were harmless.

The district court also erroneously denied McCormack's motion for a judgment of acquittal as to counts 2 and 6. Regarding count 2, the the evidence was insufficient to establish that photographs depicting a

1

sleeping child that is not aware of or involved in any activity depicted do not qualify as sexual exploitation of a child. Regarding count 6, the evidence was insufficient to prove any federal jurisdictional element required to invoke the federal kidnapping statute.

Finally, McCormack appeals his sentence of 360 months on counts 1 through 4, and life imprisonment on counts 5 and 6. The sentence was substantively unreasonable given and the court failed to explain why the 300 to 360-month sentence requested by McCormack was insufficient.

McCormack respectfully requests that this Court reverse his conviction and direct the district court to enter a judgment of acquittal as to Counts 2 and 6. Alternatively, and as to all counts, McCormack requests that the Court vacate his convictions and remand for a new trial. Also in the alternative, McCormack requests that the Court vacate his sentence and remand for re-sentencing.

## STATEMENT OF JURISDICTION

The district court had original subject matter jurisdiction over the criminal offense pursuant to 18 U.S.C. § 2251(a) and (e), and 18 U.S.C. § 3231. The court entered a final judgment on October 15, 2015. ER 1-

2

6.[1]  McCormack timely appealed on October 16, 2015.  ER 1073-74; Fed.

R. App. P. 4(b)(1)(A)(i).  This Court has jurisdiction pursuant to 28

U.S.C. § 1291.

## SENTENCE  AND  CUSTODY  STATUS

On October 15, 2015, the district court sentenced McCormack to

life in prison as to each of Counts 5 and 6 to be served concurrently, 360

months on each of Counts 1, 2, 3 and 4, all to be served concurrently, for

a total term of life.  ER 1-2.[2]  The court also imposed a life term of

supervised release on each of Counts 1, 2, 3, 4, 5 and 6.  ER 3-4.

---

[1]  "ER" refers to Appellant's Excerpts of Record, filed herewith.  PSR refers to the Pre-Sentence report filed under seal concurrent with this brief.

[2]  *See* http://www.bop.gov/inmateloc/, Register # 37958-013 (last checked June 6, 2016).

## STATEMENT OF THE ISSUES

**A.** **Did the district court abuse its discretion under Federal Rule of Evidence 403 in admitting at trial videos and images of child pornography alleged to have been produced by McCormack where McCormack was willing to stipulate to each offense element except the identity of the perpetrator?**

**B.** **Did the district court abuse its discretion under Federal Rule of Evidence 404(b), 414 and 403 in admitting emails and chat room discussions unrelated to charged images and many of which were remote in time?**

**C.** **Did the district court erroneously deny McCormack's motion for a judgment of acquittal as to Count 2, where the evidence was insufficient to establish that photographs depicting a sleeping child that is not aware of or involved in any activity depicted do not qualify as sexual exploitation of a child?**

**D.** **Did the district court erroneously deny McCormack's motion for a judgment of acquittal as to the Count 6 charging kidnapping, where the evidence was insufficient to establish the use or involvement of any instrumentality or movement in or affecting interstate commerce?**

**E.** **Did the district court abuse its discretion in imposing a substantively unreasonable sentence of life in prison on the kidnapping counts and 360 months the child pornography counts?**

4

## STATEMENT OF CASE AND FACTS

### A.    Course of Proceedings

By second superseding indictment, on February 19, 2015, McCormack was charged with four counts of sexual exploitation of a minor and attempt, in violation of 18 U.S.C. §§ 2251(a) and (e) (Counts 1 through 4); and, two counts of kidnapping and attempt in violation of 18 U.S.C. §§ 1201(a)(1) and (g) (Counts 5 and 6).  ER 154-62.  On April 10, 2015, a jury convicted him of all six counts.  ER 320-35.

### B.    Pre-Trial *In Limine* Rulings

Before trial, the trial court denied McCormack's motions *in limine*, which sought to exclude (i) videos and images other than to prove the identity of the perpetrator, and (ii) "other act" evidence comprised of emails and chat logs containing conversations not related to the charged images, videos, or other offenses.  *See* 11-16 (*in limine* ruling); 41-43 (further in limine ruling); 540-41, 646047(trial commentary on rulings); 255-257 (defense objections to proposed exhibits); 163-67 (defense motion *in limine*); 178-99 (opposition); 208-14 (reply).

### C.    Summary of Relevant Facts

The relevant evidence and offense facts are described more fully below in each argument section as relevant.

5

### D.     Defense Motion for Judgment of Acquittal

At the close of all evidence, McCormack's counsel timely moved for a judgment of acquittal for lack of sufficient evidence as to all of counts. ER 72; Fed. R. Crim. Proc. Rule 29(a).  The trial court orally denied the motion.  ER 74-75, 77-78.

### E.     Jury Instructions and Verdict

The jury was instructed on all six counts, ER 275-318, and found McCormack guilty by general verdict as to each count.  ER 320-25; 1050-53.

## ARGUMENT

### I.     THE DISTRICT COURT ABUSED ITS DISCRETION BY PERMITTING THE GOVERNMENT TO INTRODUCE AT TRIAL AND PUBLISH TO THE JURY VIDEOS AND IMAGES OF CHILD PORNOGRAPHY ALLEGED TO HAVE BEEN PRODUCED BY MCCORMACK WHERE DEFENDANT WAS WILLING TO STIPULATE TO ALL OFFENSE ELEMENTS EXCEPT IDENTITY

The district court—over McCormack's objection, and his willingness to stipulate to essentially all elements of the charged offenses other than identity (ER 44-46; 46-47; 166; 208-11)—permitted the government to introduce at trial and publish to the jury three videos and multiple images of children engaging in sexually explicit conduct. Exhs. 42, 52, 57 (videos); ER 620 (admitting videos); ER 620 (playing

6

Exh. 42); ER 625-26 (playing Exh. 52); ER 627 (playing Exh. 57); *see* Exhs. 48, 49, 61-67 (images); ER 624-25; 629-30.

The district court acknowledged that images of child pornography would substantially inflame and upset jurors of ordinary sensibilities, particularly the video images. ER 14 ("primarily the visual depictions . . . obviously they are going to be prejudicial."). Indeed, the mere mention of child pornography can stir strong emotions; actual images of child rape are so repugnant and obscene that it is highly unlikely that any jury exposed to them could fairly evaluate the evidence offered against the accused. *Cf. United States v. Krupa*, 658 F.3d 1174, 1186 (9th Cir. 2011) (Berzon, J., dissenting) ("I fear that understandable abhorrence of [child pornography] can infect judicial judgment").

And, indeed in this case, the record reflects that Juror 12 "was visibly gaping and sobbing during the playing of the videos." ER 646. Defense counsel and the Court both noted this for the record. *Id.* Defense counsel further observed: "I need to make sure that that reaction is on the record as it may relate to issues which have been

7

previously raised in regard to Rule 403 and any evidence that was presented." ER 646.[3]

Given McCormack's proffered pre-trial stipulations—*i.e.*, his offer to stipulate to every element of each § 2251(a) offense *except* the identity of the perpetrator—the undue prejudice resulting from forcing the jury to view such repugnant evidence so far outweighed any probative value under Rule 403 that the district court abused its discretion in permitting the government to introduce the multiple videos and images of child pornography. Accordingly, McCormack's convictions should be reversed and a new trial ordered.

## A.    Standard of Review

The Ninth Circuit reviews under the abuse of discretion standard a district court's ruling admitting evidence over defense objection pursuant to Federal Rule of Evidence 403. *United States v. Merino-Balderrama*, 146 F.3d 758, 761 (9th Cir. 1998).

---

[3]    The district court thereafter privately questioned juror 12, who stated that she believed she could remain fair and impartial. ER 797. It is worth noting that juror 12 went on to become the jury foreperson. *See* ER 1050.

## B. Elements of the Charged Offenses

With respect to the production of child pornography offense charged in counts 1 through 4:

**Count 1**. The government had to prove beyond a reasonable doubt that:

> (1) At the time, Victim 1/ "Elizabeth" was under the age of 18 years old;
>
> (2) The Defendant knowingly employed, used, persuaded, induced, enticed, or coerced Victim 1/ "Elizabeth" to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and
>
> (3) the visual depiction was actually transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce and such transportation or transmission occurred after October 2008.

ER 306 (relying on Ninth Cir. Model Crim. Jury Instr. 8.181); *see also* 18 U.S.C. § 2251(a); *United States v. Sheldon*, 755 F.3d 1047, 1050 (9th Cir. 2014) (describing first part as defining the criminal conduct and second part as describing the federal jurisdictional elements).

**Counts 2, 3 and 4.** The government had to prove beyond a reasonable doubt that:

> (1) At the time, Victim 2/ "Ben" was under the age of 18 years old;

9

(2)   The Defendant knowingly employed, used, persuaded, induced, enticed, or coerced Victim 2/ "Ben" to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

(3)   The visual depiction was actually transported across state lines or in foreign commerce.

ER 306 (relying on Ninth Cir. Model Crim. Jury Instr. 8.181).

For purposes of this offense, "'[s]exually explicit conduct' means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person."  ER 308.

### C.   The District Court Should Have Excluded the Actual Videos and Images of Child Pornography in Light of McCormack's Offered Stipulations

#### 1.   Given McCormack's Offered Stipulations, the Images Were Not Necessary to Prove That the Videos and Images Constituted Actual Child Pornography

Pursuant to Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403 (2016); *e.g., Merino-Balderrama*, 146 F.3d at 761 (holding that district court abused its discretion in admitting videos depicting child pornography, over defendant's offers to stipulate to

pornographic knowledge of films in light of unfairly prejudicial effect of evidence).[4]  The Supreme Court and Ninth Circuit both have held that in conducting the balancing test required under Rule 403, a district court must consider the probative value and unfair prejudice "not only for the item in question but for available substitutes as well." *Old Chief v. United States*, 519 U.S. 172, 182-83 (1997); *Merino-Balderrama*, 147 F.3d at 762-63.  "If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." *Old Chief*, 519 U.S. at 183.

Applying *Old Chief* in a case strikingly similar to the instant one, this Court concluded that "a defendant's offer to stipulate to an element of a crime is relevant evidence that *must* be factored into a district court's analysis under Rule 403," and thus the courts "must *employ Old*

---

[4]     "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

11

*Chief* whenever a defendant offers to stipulate to an element of the offense and raises a Rule 403 objection to the admission of evidence probative of that element." *Merino-Balderrama*, 146 F.3d at 762 & n.3 (emphasis added).

In *Merino-Balderrama*, the Ninth Circuit held that the defendant's offer to stipulate both that the films at issue were child pornography and that they had traveled in interstate commerce were conclusive as to those two elements and "could have required the district court to exclude further evidence probative of those elements." *Id.* at 762. The court also explained that once the defendant stipulated to those two elements, the only remaining element was scienter. Under Rule 403, the question was whether the images were more probative than prejudicial to that element.

McCormack's case presents a circumstance closely analogous to *Merino-Balderrama*, though in his case both the scienter and identity elements remained. Applying Rule 403 and *Old Chief*, the question was whether the images were more probative than prejudicial to those elements, particularly in light of the other evidence the government was able to offer. The answer to that question, under *Merino-Balderrama*,

12

is yes—the unfair prejudice outweighed the prejudice and the evidence should have been excluded.

By contrast, McCormack's case is distinguishable from *United States v. Ganoe*, 538 F.3d 1117 (9th Cir. 2008), relied on by the district court in reaching its evidentiary rulings. ER 13. In that case, the court relied on the fact that the defense suggested that "one could mistakenly download such files thinking they were adult pornography or otherwise legal," and that the images themselves were necessary "to rebut the defense's suggestion that one could download the files without intending to obtain child pornography." *Ganoe*, 538 F.3d at 1123. Here, McCormack made no such argument. Rather, he offered to stipulate to every element of the offense other than of being the perpetrator, adult male depicted in the images. ER 44-46; 46-47; 166; 208-11. This would have included stipulating that any reasonable person viewing the images even for a moment would know that they were child pornography. ER 44-45; 208-11. Thus, *Ganoe* is unlike the case here, where the disputed element is the identify of the adult male portrayed in the videos and images—which fact the government could have sought

13

to establish through different or lesser evidence than was depicted to the jury.

Under Rule 403, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly . . . an emotional one." Fed. R. Evid. 403, Adv. Comm. Notes to 1972 Proposed Rules. That is precisely what this evidence did. The probative value of the images was eliminated by McCormack's willingness to stipulate that the images contained sexually explicit images of minor, qualifying as child pornography.

The government's willingness to limit the number of videos and images it introduced or to use redacted images after the first introduction, did not in itself eliminate the unfair prejudice. *See* ER 50. The content of the videos and images is such that even a single image, even when partially redacted, had the potential to inflame the jury and render it unable to be neutral. This emotional response may have been exactly what the government sought, but is a classic example of undue prejudice substantially outweighing any probative value, especially given McCormack's willingness to stipulate to all elements of the charged offenses except for the identity of the perpetrator.

14

The government, and the district court below, mis-applied the law, construing it so that the images and videos had to be admitted unless McCormack stipulated to every single element of the offense. But that is called a guilty plea. Plainly, under *Merino-Balderrama*, 146 F.3d at 761 and *Old Chief*, 519 U.S. at 187-91, and *Ganoe*, 538 F.3d at 1123-24 that was not required.

### 2. The Videos and Images Were Not Necessary to Prove the McCormack's Identity

The images were not necessary to prove McCormack's identity. The government argued that the jury needed to see the images in order for the government to prove McCormack's identity and the scienter element of the § 2251(a) offense. *See* ER 49-53. But, again, because he offered to stipulate to every element of the offense except that he was in fact the adult male perpetrator depicted in the videos and images, then the specific *content* of the images themselves was no longer relevant to the question of whether he produced them—the only disputed issue at trial.

The government also had alternative evidence other than the images with which to try to prove that McCormack produced the sexually explicit images at issue. For example, the government

introduced evidence in the form of exhibits and testimony through Detective Paul Krawczyk, from the Toronto police department, who engaged in extensive GigaTribe chats with McCormack as "Toddlers." ER 554, 535-40; 544-52; 564; 565-67; 568-72; Exhs. 1, 2, 3, 4, 6, 9, 10, 19, 20, 21, 22. During those GigaTribe events, Krawczyk downloaded from "Toddlers" copies of the charged videos and images at issue in this case. *See* Exh. 9, 10, 21, 22. The government also had evidence that the IP (internet protocol) address associated with communications related to the videos and images. Exh. 13, 14, 18; ER 546-49.

The government had evidence based on the contemporaneous investigation by Agent David Squire from the Department of Homeland Security in Boston into the images and videos charged in counts 2 through 4. *See* ER 683-85. That investigation focused on identifying the location of the filing of the "swirl carpet series" video, and using audio and visual clues from the videos and images to do so. ER 686-704; Exhs. 84, 58, 89, 69, 90. The government also had hotel registration and identification documentation and testimony from the former co-owner of the California Best Inn, the hotel where the "swirl carpet series" video was made. ER 705-40; Exhs. 101-04.

16

And, there was evidence that child pornography was found on a laptop computer owned by McCormack and email accounts used by McCormack. ER 603-04; 608-33; *see* ER 618 (confirming location of charged images and videos on Toshiba laptop examined and testifying about precise location of files within computer's folder and archive structure). All of this evidence was significantly more probative of identity than the content of the images themselves.[5]

Taken together with McCormack's proposed stipulations, this evidence made the contents of the images were substantially more prejudicial than probative in violation of Federal Rule of Evidence 403. Accordingly, the court abused its discretion in permitting the

---

[5]    Of course, the challenged evidence was not dispositive of identity. McCormack's defense as to identity was that he did not produce the sexually explicit films or photographs with the two identified victims, and thus he also necessarily could not have had the scienter required for the production offenses. ER 902-03; 920-21; 923-24. There was evidence to support such an argument. *Id.*; *see also* ER 910-11; 927; 952-54; Exhs. A, B. But, the fact remains that, in light of McCormack's offered stipulations, there was nothing in the images themselves—depicting the rape of a toddler, and exposure of another prepubescent child's genitalia—that the jury needed to see to establish the key disputed issue of the identity of the perpetrator. *See* ER 623-25; 704.

government to introduce the films and still images. McCormack's convictions must be reversed.

### 3. The Error in Admitting the Videos and Photos Involving Prepubescent Children Was Not Harmless

The government bears the burden of proving that the erroneous admission of evidence was harmless. *Merino-Balderrama*, 146 F.3d at 763. Although the government argued that McCormack's identity was shown by all of the available evidence, ER 1002-14, 1030-37, which suggests it was unnecessary to show the specified videos and images to the jury, the government also repeatedly stressed to the jury the contents of the videos and images, *see* ER 1003, 1004, and that McCormack should be found guilty. ER 1014. Use of the videos and still clearly played to the jury's emotional response to their horrific contents. The undue prejudice that resulted from admitting them was anything but harmless. Instead, as in *Merino-Balderrama*, the erroneous admission of evidence "significantly reduced any possibility that the jury would acquit" McCormack, and thus the error was not harmless. *E.g., Merino-Balderrama*, 146 F.3d at 763 (citation and internal quotation marks omitted); *e.g., id.* at 763-64 (vacating

18

convictions where erroneous admission of evidence was not harmless in light of inflammatory and severely prejudicial nature of videos screened for jury depicting child sexual abuse was not, which "likely created an emotional impact that influenced the verdict," coupled with government's repeated references to evidence in closing argument).

In sum, as discussed above, the evidence erroneously admitted here was unduly prejudicial, was not harmless, and infected the convictions on each and every count.  As such, this Court should reverse and direct the district court to grant McCormack and new trial.  *E.g., Merino-Balderrama*, 146 F.3d at 763-64.

## II.   THE DISTRICT COURT ABUSED ITS DISCRETION IN ADMITTING EXTENSIVE EMAILS AND CHAT ROOM LOGS NOT RELATED TO THE CHARGED IMAGES

The district court also improperly admitted "other acts" evidence that did not qualify under the requirements of Federal Rules of Evidence 404(b) or 414.  The evidence included electronic chats and internet activity that relate to subjects other than the particular videos and images that form the basis of the charges in counts 1 through 4.

Moreover, even if the evidence was admissible under Rule 404(b) and/or 414, it remained inadmissible under Rule 403 because the undue

19

prejudice outweighed the probative value. The district court abused its discretion in admitting this extensive, and highly prejudicial, evidence.

## A.   Standard of Review

As noted above, this Court reviews the district court's evidentiary rulings for abuse of discretion. *Merino-Balderrama*, 146 F.3d at 761.

## B.   Disputed Evidence

The improperly admitted email and chat log evidence is detailed below:

- **Exhibits 77, 78, 79 and 80**

These exhibits consist of online chatroom discussions on GigaTribe between "Toddlers" (a screen name used by McCormack, ER 919) and other unknown chat room users ("Filetradermom", "Jessietac", "Youngdaddy chats" and "Toddlercumdaddy"[6]), from the time periods March 2010 and June 2010. ER 633-34 (foundation, admission). In these chats, "Toddlers" describes his desires to have sexual contact with very young children, and his actual contact with a young boy and girl of which he has private pictures. The exhibits came in themselves, in

---

[6]   The other party using the screen name "Toddlercumdaddy" is not unknown, as it was undercover agent Detective Paul Krawczyk, from the Toronto police department. ER 554.

addition to extensive testimony about their content and additional contextual testimony from Detective Bryan Rogers of the Colorado Springs Police Department. ER 635-42, 651-53. In one of the chats, "Toddlers" says "id love to start a kid from newborn up." Exh. 79. Other of the chats make similarly egregious and inflammatory statements.

- **Exhibits 137, 138, 139 and 140**

These exhibits consist of email correspondence between "toddlers24@yahoo.com" (an email address used by to McCormack, ER 811) and other email addresses ("droseth1011" and "slaveboy24") belonging to unknown third parties, from the time periods February 2011 and May 2011. ER 826-27 (introduced and admitted). The email correspondence discusses back and forth inquires about "CP" and "childporn" and exchanging some images; the emails discuss liking the smell of young children in diapers and particularly their crotch areas, and liking to see young children peed on. One of the other users sends an uncharged image to "toddlers24@yahoo.com", which contains a photo of a young child laying in a crib in a diaper with the focus on his crotch. *See* Exh. 139A. Not only were the exhibits admitted, but they were read

21

into the record and additional contextual explanation was testified to by Detective Adam Romine, from the Colorado Springs Police Department. ER 826-28.

- **Exhibits 5, 7, 8, 11 and 17**

These exhibits consist of online chatroom discussions on GigaTribe between "Toddlers" and some sharing of file activity. Exhibit 5 does not contain sharing of any images charged in this case. ER 545. Exhibits 7, 8, 11 and 17 are back and forth chats with "Toddlercumdaddy" (*see* fn. 6, *supra*), which contain a number of statements in which McCormack expresses sexual interactions with young children and his experience with that, in addition to his interest in sharing and viewing child pornography. *See* ER 553-63; 565-66; 570-71. A number of the statements contain very explicit statements about sexual acitivity and desires to engage in the same with young children. *E.g.,* ER 553-63; Exhs. 7, 8, 9, 17.

## C.    The Evidence Is Not Admissible Under Rule 404(b)

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence

22

"may be admissible for another another purpose, such as proving

motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident. . . ."  Fed. R. Evid. 404(b)(2); *see*

*United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir.1997) (citations

omitted).  Evidence is relevant if "it has any tendency to make a fact

more or less probable than it would be without the evidence [and] the

fact is of consequence in determining the action."  Fed. R. Evid. 401.

### 1. Legal Rules Applicable to Admissibility of Evidence Under Rule 404(b)

The Ninth Circuit applies a four factor test under *United States v.*

*Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004) in determining the

admissibility of "other acts" evidence under Rule 404(b).  "In making

admissibility decisions, the court will admit Rule 404(b) evidence if (1)

the evidence tends to prove a material point; (2) the prior act is not too

remote in time; (3) the evidence is sufficient to support a finding that

the defendant committed the other act; and (4) (in cases where

knowledge and intent are at issue) the act is similar to the offense

charged."  *Id.*

### 2. The Emails and Chat Room Discussions Unrelated to Charged Images Do Not Prove a Material Point in the Case

23

McCormack's emails and chat room discussions with unknown third parties on the general topic of child pornography, or his interest in websites that may deal with child pornography, do not necessarily prove his production of such material. *E.g.,* Exhs. 5, 7, 8, 11, 17, 77, 78, 79, 80, 137, 138, 139 and 140. In the same vein, it is arguable that if McCormack is seeking such images from other sources, that fact contradicts the position that he had the opportunity and ability to produce the materials on his won. Regardless, such other act evidence of discussions regarding McCormack's abstract interests with unknown third parties is not sufficiently probative of the charged offenses to be admissible in that regard. *See, e.g., United States v. Ramirez-Robles*, 386 F.3d 1234, 1243 (9th Cir. 2004) (holding that district court abused it discretion in admitting evidence of defendant's prior conviction of user quantity of drugs in prosecution to prove conspiracy and possession with intent to distribute offenses).

### 3. The Other Act Evidence Is Too Remote in Time

In addition, the trial court permitted the government to introduce—over McCormack's objection (ER 44, 213)—emails and chats

that purportedly took place in March 2010, June 2010, February 2011, and May 2011—*i.e.,* months, and even years, *after* the charged conduct.

### 4. The Evidence Is Not Sufficient to Show That McCormack Committed the Other Act

It is likely that the evidence is sufficient to meet this element of the test.

### 5. The Other Act Evidence Is Similar to the Offense Charged Where Knowledge, Intent or Another Relevant Factor Is at Issue

As discussed above, knowledge and intent were not at issue in this case, since McCormack was willing to stipulate to all material elements of the offense except that of identity—*i.e.*, he continued to deny that he was the perpetrator who produced the sexually explicit images.  ER 44-46; 46-47; 166; 208-11; *c.f., e.g., Verduzco,* 373 F.3d at 1027-28 (other acts evidence properly admitted to prove state of mind; "Verduzco's state of mind was the central issue at trial, the parties offered sharply divergent accounts, and the circumstances of the prior smuggling attempt were plainly probative, though by no means dispositive, of his state of mind on this occasion.").

Here, the government did not contend that its evidence proffered proved that McCormack produced child pornography other than the

images relating to counts 1 through 4. Instead, the emails and chats

logs arguably showed other instances of McCormack attempting to or

acquiring child pornography, or discussing issues having to do with the

subject of child sex. These general discussions are not probative of his

being the *producer* of the charged material and are not sufficiently

probative of that activity.

Based on the above, evidence that the defendant engaged in

electronic communications with others concerning the general subject of

child pornography or sought material from other sources is not

sufficiently probative of his production of the materials at issue to be

admissible under Rule 404(b). In addition, if the court should

determine that the evidence is admissible under Rule 404(b), it still

must be excluded under Rule 403, for the reasons discussed below.

### D.    The Evidence Is Not Admissible Under Rule 414

Rule 414(a) provides that "[i]n a criminal case in which the

defendant is accused of an offense of child molestation, the court may

admit evidence that the defendant committed any other child

molestation. The evidence may be considered on any matter to which it

is relevant." Fed. R. Evid. 414(a)). "Under Rule 414(a), the key to

admissibility is relevance, and no independent evidence of the commission of the prior bad act is required." *United States v. Norris*, 428 F.3d 907, 913 (9th Cir. 2005) (citing *U nited States v. Lemay*, 260 F.3d 1018, 1026 (9th Cir. 2001)). Admission of evidence under Rule 414 remains subject to Rule 403 prejudice analysis. *LeMay*, 260 F.3d at 1026.

The court identified five factors for district courts to consider in the Rule 414 analysis: (1) "the similarity of the prior acts charged"; (2) the "closeness in time of the prior acts to the acts charged"; (3) "the frequency of the prior acts"; (4) the "presence or lack of intervening circumstances," and (5) "the necessity of the evidence beyond the testimonies already offered at trial." *Lemay*, 260 F.3d at 1028.

The evidence in the present case is unlike that held admissible in under applications of Rule 414. Here, the evidence is entirely made up of written email correspondence or chat room discussions about conduct, as opposed to testimony by victims or witnesses, or evidence of prior convictions. *E.g., United States v. Young*, 623 Fed. Appx. 863, 867 (9th Cir. Aug. 19, 2015) (unpub. dispo.) (holding that district court properly admitted prior acts of sex abuse of young girls—one of which previously

27

had been charged and one of which defendant issued a written

confession about); *United States v. James,* 253 Fed.Appx. 711, 2007 WL

3302103 (9th Cir. Nov. 8, 2007) (unpub. dispo.) (holding that district

court properly admitted evidence of prior conviction for child

molestation under Rule 414, which was not barred by Rule 403; district

court required government to admit evidence in noninflammatory way

and court gave limiting instruction immediately after admission of

conviction evidence); *United States v. Stern*, 391 Fed. Appx. 621, 2010

WL 3069710, at *1 (9th Cir. Aug. 4, 2010) (unpub. dispo.) (testimony of

defendant's sister, that defendant had sexually abused her repeatedly

when he was between eleven and thirteen years old, was admissible,

since acts of sexual abuse were similar in nature).

### E. Even If Admissible Under Rule 404(b), the Evidence Did Not Pass the Rule 403 Balancing Under the *Glanzer* Factors

In *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir.

2000), the Ninth Circuit held that the admissibility of other acts

evidence under Rule 404(b) was subservient to the prejudice balancing

test under Rule 403. *Id.* at 1268. The court also reiterated that

"[b]ecause of the inherent strength of the evidence that is covered by

28

Rule [414], when putting this type of evidence through the [Rule 403] microscope, a court should pay 'careful attention to both the significant probative value and the strong prejudicial qualities' of that evidence." *Id.* (quoting *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998)).

### 1. The Prior Acts Are Not Similar to the Acts Charged

McCormack is charged with producing child pornography. None of the proffered "other act" evidence deals with his production of videos or images other than that which are charged in counts 1 through 4. Accordingly, the evidence does not relate to the kind of activity, which the defendant is alleged to have committed.

### 2. The Prior Acts Evidence Is Remote in Time from the Acts Charged

The other acts evidence also is remote in time, in that it occurred in some instances approximately 8 months after the acts charged.

### 3. The Prior Acts Were Somewhat Frequent, But Not Similar

The other acts are of some frequency, but again, they are not of conduct similar to that alleged in counts 1 through 4.

### 4. Intervening Circumstances Were Present

29

There also were numerous intervening acts and circumstances that separate the charged offenses from the alleged other acts.

### 5. The Evidence Was Not Necessary in Light of the Other Evidence Offered at Trial

As to the last *Glanzer* factor, the government presented what it considered to be compelling evidence that McCormack produced the videos and images alleged in the second superseding indictment. This included: electronic communications, discussions and other internet activity that does not deal directly with whether McCormack was the person who produced those videos and images is not sufficiently probative to overcome the extreme prejudicial effect of such evidence. It amounts simply to proclivity evidence, which is just the type of evidence which Rule 404(b) prohibits.

The present case is distinct from, for example, *Lemay*, in which the prosecution introduced evidence and testimony about a prior child sex offense for which the defendant had been convicted after admitting to the conduct. *Lemay*, 260 F.3d at 1029. The court agreed with the district court's finding that the evidence was "highly reliable," and that it was based on the defendant's own admissions, not rumor, innuendo, or prior uncharged acts capable of multiple characterizations." *Id.*

30

Similarly distinguishable is *Ganoe*. In that case, central part of the Ninth Circuit's reasoning that the district court did not abuse its discretion in admitting clips from 10 videos depicting child pornography was its "emphas[is] that each of the clips was derived from files charged in the indictment, the images shown to the jury were thus not extrinsic to the crime charged, "but rather a part of the actual pornography possessed." *United States v. Ganoe,* 538 F.3d 1117, 1124 (9th Cir. 2008).

As this Court noted in *Ganoe*, "[t]he trial judge's job is to avoid unfair prejudice." *Ganoe*, 538 F.3d at 1124 (citation and internal quotation marks omitted). Each clip in that case was only a few seconds long, totaling less than one minute. *Id.* The district court gave two cautionary instructions, which directed the jury to view the evidence "in an impartial and unbiased manner." *Id.* This also followed careful voir dire on the subject. *Id.*

Finally, the evidence in McCormack's case was handled very differently than in *United States v. Hardrick*, 766 F.3d 1051, 1055-56 (9th Cir. 2014). In a prosecution for two counts of knowingly receiving visual depictions of minors engaged in sexually explicit conduct, the

31

Ninth Circuit agreed that the probative value of uncharged child pornography videos found on the defendant's home computers was not outweighed by a danger of unfair prejudice. *Id.* The uncharged videos were highly probative of defendant's knowledge and relevant to his defenses that he either downloaded the charged videos accidentally while downloading legal pornography or other files or that a hacker had downloaded the charged videos, the uncharged videos were only briefly described, not shown to the jury, and the trial court gave a limiting jury instruction at the close of the evidence. *Id.*

Here, by contrast, because McCormack had agreed to stipulate as to all elements save for identity, the probative value of the evidence was eliminated by his offer. Because he was not advancing defenses like those in *Hardrick* where the government may have needed the prior acts evidence to rebut those defenses.

In addition, here, the emails described particularly egregious conduct and propensities, and the emails were both read into the record by various witnesses as well as introduced as exhibits.

32

**F.     The Error in Admitting the Emails and Chats Was Not Harmless**

The government referred to these emails repeatedly in closing argument.  ER 1000-01.  She argued that McCormack, through these chats and emails, "admitted" that he was the perpetrator in the videos or the person who took the still photos of both Elizabeth and Ben.  ER 1000-01.  Counsel argued that McCormack "admitted" in his emails and chats he sexually abused Elizabeth and Ben.  ER 1014.  Counsel also argued that in these emails and chats, McCormack "admitted" that he took Ben to a hotel, that he was the "masked" guy, and that he raped Ben.  ER 1007, 1032; *see also* ER 1041.  The number of times, and emphasis that government counsel placed on this evidence, shows its importance to their case and the devastating effect to McCormack's own defense.  It cannot be said that the erroneous admission of this evidence was harmless error.  *E.g., Merino-Balderrama*, 146 F.3d at 763-64 ("In this case, improperly screening the films for the jury likely created an emotional impact that influenced the verdict.  Compounding the error, the prosecution made no fewer than ten references to the films during closing argument, including several specific references to images that

the jury had seen in the films. This emphasis on unfairly prejudicial evidence militates against a finding of harmless error.").

This Court should reverse the convictions on counts 1 through 4, and count 5—the kidnapping offense related to the March 2009 "swirl carpet series" video, which depends on the same evidence of identification as with count 3.

## III. THE DISTRICT COURT ERRED IN DENYING MCCORMACK'S RULE 29 MOTION FOR A JUDGMENT OF ACQUITTAL ON COUNTS 2 AND 6

At the close of the government's case and of all evidence, McCormack moved for a judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29(a). ER 72; 985-86. As to count 2 specifically, the defense argued that the images of B involved only a child who appeared to be sleeping. ER 72. Although the photograph depicted display of an adult male penis, because the child was sleeping, it was not aware of what was going on. *Id.* Thus, the photographs do "not qualify as sexual exploitation of a child because the child is not involved in the event or any of the activity that's going on." *Id.*

As to count 6, the kidnapping counts related to the November 2009 date, the defense argued that the government failed to present any

34

evidence "about the use or involvement of any instrumentality or movement in or affecting interstate commerce" which was "a fatal" evidentiary failure on that "jurisdictional" element of the kidnapping offenses. ER 76. The trial court orally denied the Rule 29 motions. ER 74-75, 77-78. This was error, and requires reversal and entry of judgment in favor of McCormack on counts 2 and 6.

### A. Standard of Review

"When a claim of sufficiency of the evidence is preserved by making a motion for acquittal at the close of the evidence, this court reviews the district court's denial of the motion de novo." *United States v. Gonzalez*, 528 F.3d 1207, 1211 (9th Cir. 2008); Fed. R. Crim. Proc. 29(a).

### B. As to Count 2, the Evidence Was Insufficient Because the Charged Photographs Depicted a Sleeping Child Unaware of or Involved in Any Activity Depicted, and Thus Do Not Qualify as Sexual Exploitation of a Child

#### 1. Offense Facts

Count 2 charged McCormack with sexual exploitation of a minor through production of sexually explicit material by taking several photographs with Ben. The images charged in this offense were PICT0276.jpg, PICT0277.jpg, PICT0278.jpg, and PICT0279.jpg. The

images depict Ben, fully clothed in his crib, sleeping on his side in fetal position, with no unusual body exposure or posture. ER 620-22; *see* Exhibits 35-40 (photos and redacted versions of each charged image). The photos also depict in the same frame an erect adult male penis, which appears to be hovering above Ben at a distance of several inches or more, but not making any contact with Ben. *See id.*

## 2. Elements of the Offense

As noted above, as to count 2, the government was required to prove the following:

> (1) At the time, Victim 2/"Ben" was under the age of 18 years old;
>
> (2) McCormack knowingly employed, used, persuaded, induced, enticed, or coerced Victim 2/"Ben" to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and
>
> (3) The visual depiction was actually transported across state lines.

ER 306 (relying on Ninth Cir. Model Crim. Jury Instr. 8.181).

McCormack disputes the sufficiency of the evidence as to the second element—*i.e.*, that Ben took part in "sexually explicit conduct." ER 72 (defense argument).

36

For purposes of this offense, "'sexually explicit conduct' means actual or simulated sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person."  ER 308.

The instruction given in this case continues:

> With respect to 'lascivious exhibition of the genitals or pubic area of any person' as contained in the preceding definition of 'sexually explicit conduct,' whether a picture or image of the genitals or pubic area constitutes such a lascivious exhibition requires a consideration of the overall context of the material.  It is for you to decide the weight or lack of weight to be given to any of the following factor. A picture or image need not involve all of these factors to constitute a lascivious exhibition of genitals or pubic area of any person, any you may find that the image is a lascivious exhibition of the genitals even if only one or more of the factors is present.

> You may consider such factors as:

> (1)   whether the focal point of the picture or image is on the child's genitals or pubic area;

> (2)   whether the setting of the picture ore image is sexually suggestive, that is, in a place or pose generally associated with sexual activity;

> (3)   whether the child is depicted in an unnatural pose or inappropriate attire, considering the age of the minor;

> (4)   whether the child is fully or partially clothed, or nude;

(5)  whether the picture or image suggests sexual coyness or a willingness to engage in sexual activity; and

(6)  whether the picture or image is intended or designed to elicit a sexual response in the viewer.

ER 309.

### 3.  Analysis

A critical—and undisputed—point here is that Ben was sleeping. ER 621; Exh. 35.  He is depicted fully clothed, the photograph does not focus on his crotch area, and there is no evidence that he is posed in a sexually suggestive position.  *See id.*  Because he was sleeping, Ben was not involved in or aware of any activity.  *See* ER 72.

The government contended below that because an adult male penis is partially depicted within the frame of the photo (in the bottom, center portion), that the exhibition of the adult genitalia is sufficient to qualify as "lascivious exhibition" of genitals and that the photo could be "intended to sexually arouse the viewed of such photographs." ER 73.

The district court cited no authority to support its conclusion that the above evidence is sufficient as a matter of law to meet the definition of sexual exploitation of a minor, and instead, conclusorily stated that it was a fact issue for the jury to decide.  *See* ER 74-75.  Counsel for McCormack has identified no authority stretching the statute this far.

38

Each of the three federal cases counsel identified involves a sleeping child whose was molested or otherwise had her or his genitals exposed in a charged image. On that basis, each of those courts held that even apparently sleeping child could be engaged sexually explicit activity within the meaning of § 2251(a).

For example, in *United States v. Finley*, 726 F.3d 483 (3d Cir. 2013), the court affirmed the defendant's conviction for production of child pornography where the images involved the defendant sexually and explicitly touching a boy who was sleeping, and thus the boy did not participate in the activity. *Id.* at 489. The court held that because there was explicit touching of the sleeping boy, the district court did not err in instructing that a sleeping child under the circumstances could be engaged in sexually explicit conduct and the court did not err in denying the defendant's Rule 29(a) motion. *Id.* at 489, 494-95.

In *United States v. Levy*, 594 F.Supp.2d 427 (S.D. N.Y. 2009), the district court denied the defendant's Rule 29 motion for judgment of acquittal on a § 2251(a) production charge. *Id.* at 430-31. A jury convicted defendant after hearing evidence that the defendant sexually molested a sleeping 5-year-old girl and photographed it. *Id.* The

39

defendant "pulled up [the girl's] pajama top to expose her belly and public area, and then, with one hand reached into her pajama bottoms and touched her genital area. He also took her hand and placed it onto his penis. He took three photographs of this conduct." *Id.* at 431. Although the child was asleep and unaware of the conduct, the court found the child was sufficiently "engaged" in the sexually explicit conduct under § 2251(a).

Finally, in *United States v. Thomas*, 92 Fed. Appx. 960, 2004 WL 765107 (4th Cir. Apr. 12, 2004) (unpub. dispo.), the defendant was charged with production under § 2251 after making a VHS-videotape recording depicting a sleeping nine-year-old girl (the daughter of defendant's neighbor). *Id.* at *1. In the video, the "camera zooms in on the child's panties" and the defendant's "hand is seen moving aside the crotch of the panties and the child's exposed genitals are filmed for approximately two minutes" while the child continues to sleep for several minutes. *Id.*

Again, each of these cases are distinguishable from the evidence here in which the charged photographs depict a sleeping child unaware of or involved in any activity depicted. As a matter of law, the evidence

40

was insufficient to satisfy the second element of the § 2251(a) charge. *See, e.g., United States v. Norris*, 428 F.3d 907, 915 (9th Cir. 2005) (reversing conviction for aggravated sexual abuse of a child where insufficient evidence of contact with child's genitalia on alleged occasion). This Court should vacate the conviction on this count and direct the district court to enter a judgment of acquittal.

## C. As to Count 6, Which Charged Kidnapping, the Evidence Was Insufficient to Establish the Use or Involvement of Any Instrumentality or Movement in or Affecting Interstate Commerce

### 1. Offense Facts

This charged for federal kidnapping was based upon the following facts: On November 6, 2009, McCormack "abducted" Ben in the middle of the night from his family's home in Bakersfield, California.[7] McCormack, who had been friends with Ben's father, had come to visit and was spending the night at their house. McCormack and Andrew had hung out playing video games until about 1:00 in the morning, when Andrew took a shower and McCormack went to bed. When

---

[7] These offense facts are taken from a composite of the following testimony of witnesses at trial: ER 873-78 (Ashley Karen); ER 853-59 (Andrew); ER 770-78 (Bakersfield police officer Robert Robles); 911-17 (McCormack).

41

Andrew checked on his children, Elizabeth and Ben, around 1:40 am, he discovered Ben missing from his room. Andrew woke up Ashley Karen, Ben's mother, who began searching the house and yard for Ben. Ashley Karen flagged down a patrol police officer outside their home. Andrew realized that McCormack was not at their house, either. The police used Andrew's phone to call McCormack, who answered and explained that had left the house to get something to drink at 7-11 and that he brought Ben along for the ride, because Ben had wandered into the room where McCormack was sleeping. McCormack returned a few minutes later, with Ben in the car. Ben was wearing only the diaper that his parents had put him to sleep in, and he appeared cold, but otherwise unharmed after the officers evaluated him.

### 2.   Elements of the Offense

With respect to the kidnapping offense charged in count 6, the government had to prove that:

> (1)   The defendant wilfully and unlawfully kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away Victim 2/ "Ben" and;
>
> (2)   The Defendant held Victim 2/ "Ben" for ransom, reward, or other benefit; and
>
> (3)   (i) the Defendant traveled in interstate or foreign commerce; or

42

(ii)   the Defendant used the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of commission of the offense; and

(4)   Victim 2/ "Ben" had not attained the age of eighteen years;

(5)   The Defendant had attained the age of eighteen years; and

(6)  The Defendant was not a parent, grandparent, brother, sister, aunt, uncle, or an individual having legal custody of Victim 2/ "Ben".

ER 310 (citing Ninth Cir. Model Crim. Jury Instr. 8.114); 18 U.S.C. § 1201(a), (g).  Count 6 also was charged as attempt.  ER 312; 18 U.S.C. § 1201(d).

The third set of elements requires proof to establish federal jurisdiction over the offenses.  It is on this element that the government's evidence was fatally insufficient.   ER 76 (defense argument).

"Section 1201 essentially federalizes the common-law crime of kidnapping in certain enumerated situations.  Although the crime of kidnapping is complete upon the unlawful seizing and detention of the victim, federal jurisdiction over the crime attaches only upon meeting one of the jurisdictional predicates set forth in the statute." *United*

43

*States v. Toledo*, 985 F.2d 1462, 1465-66 (10th Cir. 1993); *United States v. Bancalari*, 110 F.3d 1425, 1429 (9th Cir. 1997) (citing *Toledo* with approval on this jurisdictional analysis).

McCormack argued here that the evidence was insufficient to meet the federal jurisdictional requirements because there was "no evidence presented about the use or involvement of any instrumentality or movement in or affecting interstate commerce." ER 76. The government attempted to support the federal jurisdictional requirements on three alternative theories: (1) that McCormack had traveled from Colorado to Bakersfield, California to visit the family and thereby gain access to Ben, and thus he traveled in interstate commerce; (2) the child's father testified that "the defendant would routinely call him at least a day before coming over" and thus "the use of the phone to obtain access to the child in order for him to then kidnap the child is the use of a facility or instrumentality or means of interstate or foreign commerce"; and (3) McCormack responded to a phone call from police (on the father's phone) in which McCormack explained that he was at the store with Ben and would return to the house, which "the United States believes is him attempting to conceal

44

the offense, which in effect allows him to facilitate the commission of the offense" by phone.  ER 76-77.

The evidence does not match up to that posited by the government.  Nor does the law allow support federal jurisdiction on the record in this case.

First, McCormack testified that when he visited his friend Andrew in November 2009 in Bakersfield, California, he had come from Colorado where he was living at the time.  ER 897, 911; *see* Exh.154 (interview of defendant's interview with police in November 2009, not reported in transcript but played for the jury and admitted into evidence at ER 834-35).  However, McCormack did ***not***, as the government contends, "testify about traveling from Colorado to Bakersfield in order to ultimately obtain access to the child."  ER 76. The government has cited ***no authority***, nor has appellant's counsel identified any, holding that simply because the defendant lived in a different state at the time and traveled from that state prior to the conduct involved in an alleged kidnapping is sufficient to meet the jurisdictional requirement where it is undisputed that the defendant *did not* take the victim across state lines.  Rather, the Ninth Circuit

45

cases finding sufficient evidence to support federal jurisdiction under

§ 1201 in reliance on the "interstate or foreign travel" prong all have

involved travel or transportation of the *the victim* across state or foreign

borders. *E.g.*, *United States v. Garcia*, 854 F.2d 340, 341 (9th Cir. 1988)

(transportation of minors across international border from Mexico to

California sufficient for federal jurisdiction in kidnapping prosecution

under § 1201); *United States v. Wesson*, 779 F.2d 1443, 1444 (9th Cir.

1986) (evidence sufficient to meet federal jurisdictional requirements

where defendant truck driver transported kidnapping victim across

state lines in his truck while transporting commercial goods); *United*

*States v. Redmond*, 803 F.2d 438, 439 (9th Cir. 1986) (affirming

conviction for federal kidnapping where defendant transported minor

across state lines by car). The government's evidence on this point

simply did not establish the interstate or foreign travel prong sufficient

to invoke federal jurisdiction.

Next, the government contends that Andrew, the child's father,

testified that McCormack would typically call him a day or so ahead of

an in-person visit. ER 76. However, Andrew did ***not*** testify that

McCormack called him prior to the November 2009 visit. He testified:

46

Q.   Taking you back to 2007 through 2009. Did Shawn McCormack ever spend the night at your home while you were living in

Bakersfield, California?

A.   Yes. A few times.

Q.   And why would he be spending the night at your residence?

A.   He'd call.  He lived and worked out of town.  He'd want to hang out and have a place to stay the night at. You know.  And he was my friend.  I let him.

Q.   And with respect to his job, do you know what he did for a living?

A.   My understanding was he drove around and worked on cell towers.

Q.   And prior to coming over to spend the night, would he call you?

A.   *Yeah, usually he'd call me a day or so in advance.*

Q.   And how many nights at a time would he stay at your place during these visits?

A.   Just one night usually.  Kind of just passing through.

ER 847-48 (emphasis added); 849 (testifying that McCormack visited

him twice in 2009 when Andrew and his family lived on Wilson Road in

Bakersfield).  Andrew testified in detail about McCormack's visit in

November 2009—that McCormack arrived when it was dark, they went

four wheel diving after McCormack arrived, and upon returning to the

47

house, and they played video games late into the night. ER 853-54, 855-56. At no point did Andrew testify that McCormack called him to make plans for the November 2009 visit. The government's claim to the contrary is not supported by the record.

By contrast, the government tries to stretch the evidence to cure the jurisdictional defect in its evidence. Government counsel argued:

> And respectfully, Your Honor, the testimony from Andrew was that he would call a day prior. And so we're talking about on or about November 6th, 2009. With that type of testimony in the record, that would put us at November 5th that he used the phone to get in touch with Andrew to obtain access to Ben. And so we submit that that is sufficient for purposes of how we charged it.

ER 77. The simply matter, however, is that the evidentiary record at trial was not sufficient to establish jurisdiction.

Finally, defense counsel argued forcefully below that the phone call initiated by the police to McCormack cannot be used as "the jurisdictional element" of something being done by McCormack. ER 77. Indeed, the government has cited no authority (nor has appellant's counsel located any) that the government can rely on the police's phone call to McCormack to establish jurisdiction.

48

Given the insufficient evidence of any jurisdictional element, the trial court erred in denying McCormack's Rule 29 motion on Count 6. *See* ER 77-78. This Court should vacate the conviction and remand with instructions to enter a judgment of acquittal on that count.

## IV. THE DISTRICT COURT'S SENTENCE OF LIFE IN PRISON ON COUNTS 5 AND 6, AND 360 MONTHS ON COUNTS 1 THROUGH 4, WAS SUBSTANTIVELY UNREASONABLE

### A. Standard of Review

This Court employs "'the familiar abuse-of-discretion standard of review'" to determine whether a sentence is substantively unreasonable. *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012).

### B. A District Court's Sentence Is Substantively Unreasonable If It Reflects a Clear Error in the Court's Judgment in Weighing the Relevant Factors and Fails to Give Due Consideration to the Parsimony Principle

Pursuant to 18 U.S.S.C. § 3553(a), a district court must consider seven statutory factors in imposing sentence: "the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the

need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013) (citing 18 U.S.C. § 3553(a)(1)-(7)).

Yet, it is the parsimony principal reflected in § 3553 (a)(2) that the Supreme Court has emphasized is the most important factor in a sentencing court's decision. *Pepper v. United States*, 562 U.S. 476, 491 (2011) (internal quotation marks omitted). *Id.; Kimbrough v. United States*, 552 U.S. 85, 101, 111 (2007); *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Indeed, as the Supreme Court has made clear, "the District Court's *overarching duty* [is] to impose a sentence sufficient, but not greater than necessary to serve the purposes of sentencing." *Pepper*, 562 U.S. at 491 (emphasis added).

Through the directive of parsimony, Congress embedded in federal sentencing legislation the moral imperative to impose on any individual the least suffering that is demanded by the general welfare. *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013) (citing 18 U.S.C. § 3553(a), (a)(2)) ("Congress enacted 18 U.S.C. § 3553(a) in order to ensure that judges impose sentences 'sufficient, but not greater than

50

necessary, to comply with the purposes' of imprisonment, such as deterrence, punishment, and public safety."). Thus, under clear precedent, a district court's charge is to impose a particularized sentence minimally sufficient to accomplish the statutory purposes of sentencing. *E.g., id.*

Moreover, the sentencing court must make an "individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). The Guidelines factor, § 3553(a)(4), should not "be given more or less weight than any other." *Carty*, 520 F.3d at 991, 993 (applying "totality of the circumstances" analysis).

While this Court may not reverse just because it "think[s] a different sentence is appropriate," *id.* at 993, it may reverse if it has "a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors," *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009).

**C.** **The Life Sentence on Counts 5 and 6, and the 360-Month Sentence on Counts 1 Through 4, Was Substantively Unreasonable**

The court's comments—considered individually or cumulatively—when viewed in the entire context of McCormack's background and criminal history, including the defense arguments regarding the child pornography sentencing guidelines, justified such a lengthy sentence of 360 months where a more reasonable sentence, such as the 300-month sentence requested by McCormack, would have been sufficient. The court thus abused its discretion. *Cf. Amezcua-Vasquez*, 567 F.3d at 1054-58 (vacating sentence as substantively unreasonable where "the district court applied the Guidelines sentence without considering the defendant-specific facts that made the resulting sentence unreasonable under § 3553(a)"); *United States v. Olhovsky*, 562 F.3d 530, 550-52 (3d Cir. 2009) (concluding that a below-guidelines sentence was substantively unreasonable as too high because the sentencing court's explanation that it could not predict the defendant's risk of recidivism and that prior efforts at therapy had failed, together with its failure to address defendant's mitigation arguments, "reinforce[s] our concern that the court was so offended by the nature of [defendant]'s conduct

that it sentenced the offense at the expense of determining an appropriate sentence for the offender").

The district court here committed a "clear error in judgment" in weighing the § 3553(a) factors. *E.g., Amezcua-Vasquez*, 567 F.3d at 1057-58; *see United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005) (sentencing error may occur when court considers appropriate factors but, "in weighing those factors commits a clear error of judgment") (citation and internal punctuation omitted). Congress has dictated that "[t]he court shall impose a sentence sufficient but not greater than necessary." 18 U.S.C. § 3553(a) (emphasis added).

As noted above, the Supreme Court has described this as "an overarching provision [that] instruct[s] district courts." *Kimbrough*, 552 U.S. at 101. Yet the district court here gave no real consideration for the arguments raised by the defense and failed to explain why, a life sentence was necessary, and anything less would be insufficient. The result here violated that "overarching provision" and demonstrates that the court abused its discretion, thus rendering the sentence imposed substantively unreasonable.

A closer look at all of the circumstances indicates that a sentence of life on counts 5 and 6, and 360 months on counts 1 through 4, was "greater than necessary" to achieve the purposes of sentencing. Thus, the sentence was unreasonable and should be vacated and remanded. *E.g., Amezcua-Vasquez*, 567 F.3d at 1057-58.

## CONCLUSION

For the reasons addressed above, McCormack respectfully requests that this Court reverse his convictions on counts 2 and 6 and direct the district court to enter a judgment of acquittal on those counts. Alternatively, and as to all counts, McCormack requests that this Court vacate his convictions and remand for a new trial. Also in the alternative, McCormack requests that the Court vacate his sentence and remand for re-sentencing.

Dated: July 29, 2016        Respectfully submitted,

*s/ Johanna S. Schiavoni*
JOHANNA S. SCHIAVONI

LAW OFFICE OF JOHANNA S. SCHIAVONI
*Attorney for Appellant Shawn McCormack*

55

# CERTIFICATE OF RELATED CASES

Counsel is unaware of any related cases.

Dated:  July 29, 2016          Respectfully submitted,


                               *s/ Johanna S. Schiavoni*
                               JOHANNA S. SCHIAVONI

                               LAW OFFICE OF JOHANNA S. SCHIAVONI
                               3170 Fourth Avenue, Suite 250
                               San Diego, CA 92103
                               Tel: (619) 269-4046
                               johanna@schiavoni-law.com

                               *Attorney for Appellant Shawn McCormack*

# CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a) and Ninth Circuit Rule 32-1, I certify that the accompanying opening brief is within the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,456 words, exclusive of the table of contents, table of authorities, signature lines, and certificates of service and compliance, as counted by the word count program of Microsoft Word.

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief is prepared in a proportionally spaced typeface using 14-point Century Schoolbook font.

Dated: July 29, 2016          Respectfully submitted,


*s/ Johanna S. Schiavoni*
By: Johanna S. Schiavoni

LAW OFFICE OF JOHANNA S. SCHIAVONI

## CERTIFICATE OF SERVICE

Ninth Cir. Case No. 15-10500

E.D. Cal. Case No. 11-cr-000324-AWI-BAM-1

I certify that on July 29, 2016, I filed the foregoing

**APPELLANT'S OPENING BRIEF** via the Ninth Circuit's Appellate

CM/ECF system, and that all parties are registered participants in

Appellate CM/ECF.

*s/ Johanna S. Schiavoni*
Johanna S. Schiavoni