No. 15-10500

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE,

V.

SHAWN MCCORMACK,
DEFENDANT-APPELLANT.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
D.C. NO. 1:11-CR-324-AWI
_____

ANSWERING BRIEF OF THE UNITED STATES
_____

PHILLIP A. TALBERT
Acting United States Attorney

CAMIL A. SKIPPER
Assistant U.S. Attorney
Appellate Chief

PATRICK R. DELAHUNTY
MEGAN A. S. RICHARDS
Assistant U.S. Attorneys
Eastern District of California
2500 Tulare Street, Suite 4401
Fresno, California 93721
Telephone: (559) 497-4000

Attorneys for Appellee

TABLE OF CONTENTS

Table of Contents.................................................................i

Table of Authorities .........................................................v

Statement of Jurisdiction ................................................1

Issues Presented for Review............................................1

Bail Status ........................................................................2

Statement of the Case......................................................2

    I.  Procedural History ..................................................2

   II.  From 2008 to 2009, McCormack sexually assaulted
       two toddlers, produced child pornography depicting
       his assault of the children, and kidnapped the
       younger child at least twice. .....................................4

       A.  Police caught McCormack abducting Ben in
           November 2009......................................................4

       B.  McCormack distributed pornography of Ben and
           Elizabeth while he was online with an
           undercover law enforcement officer in 2010. ......6

       C.  McCormack's online exchange of child
           pornography led to a search of his computer and
           email accounts which contained additional child
           pornography of Ben and Elizabeth. ...................7

       D.  In an unrelated investigation, agents found a
           laptop containing videos and images that
           depicted McCormack sexually assaulting Ben in
           a motel room. .....................................................8

       E.  McCormack produced additional sexually
           explicit images of Ben and Elizabeth...............10

i

F. Prior to trial, McCormack moved to exclude all images based on his stipulation to all elements of the charged crimes except identity and scienter. ................................................................. 11

G. McCormack's PSR correctly calculated his guideline sentencing range at life imprisonment and recommended a sentence of life based on the relevant § 3553(a) factors ............................................. 14

H. The court sentenced McCormack to life imprisonment. .................................................... 15

Summary of Argument ........................................... 16

Argument .......................................................... 18

I. The district court did not abuse its discretion by admitting the evidence that was necessary to identify McCormack as the individual that produced the images and videos charged in the indictment and that kidnapped Ben. ...................................... 18

A. Standard of Review ............................................. 18

B. The admitted videos and images, Gigatribe chat transcripts, and emails were necessary to establish the identity of the individual that produced the charged videos and images and kidnapped Ben. .................................................. 18

1. Count One .................................................... 19

2. Count Two .................................................... 22

3. Count Three .................................................. 23

4. Count Four ................................................... 25

5. Counts Five and Six ....................................... 26

C. The probative value of the disputed evidence weighed in favor of its admission under Rule 403.

　　1. Rule 403 does not bar incriminating evidence merely because it is disturbing or when a stipulation regarding such evidence has been proposed. .........................................................27

　　2. The district court properly balanced the probative value of the evidence against the unfair prejudice when considering McCormack's proposed stipulation..............................32

　　　　a. There were no alternatives to the disputed evidence. ...................................32

　　　　b. The proposed stipulation and exclusion of the disputed evidence would have resulted in unjustified gaps and missing chapters in the prosecution's case...........................36

　　　　c. The proposed stipulation was incomplete...............36

　　　　d. The government substantially narrowed the amount of potentially prejudicial evidence introduced at trial. ...................................38

D. Assuming arguendo that admitting the disputed evidence was an abuse of discretion, it was harmless error. ...................................................39

E. Alternatively, the Gigatribe chats and four contested emails were admissible under Rules 404(b) and 414. ...............................................40

　　1. Standard of Review .......................................41

　　2. The Gigatribe chats and four emails were inextricably intertwined with evidence of the charged crimes. ..........................................41

iii

3.   The disputed evidence is admissible under
      Rule 404(b). ................................................ 42

4.   The disputed evidence is admissible under
      Rule 414 .................................................... 45

II. The district court's denial of McCormack's Rule 29
     motion was proper ................................................ 46

A.  Standard of Review ........................................ 47

B.  Sufficient evidence was introduced by the
     government during its case-in-chief to support a
     finding of guilt on counts two and six. .............. 48

1.   The images charged in count two are
      sexually explicit. ........................................ 48

2.   The government established the interstate
      element of the kidnapping charge in count
      six. ....................................................... 51

III. The district court did not abuse its discretion by
      imposing a sentence that included a term of life
      imprisonment. ............................................... 56

A.  Standard of Review ........................................ 56

B.  McCormack's offense conduct warranted a
     guideline sentence that included life
     imprisonment. ............................................... 56

Conclusion ......................................................... 60

Statement of Related Cases ..................................... 61

Certificate of Compliance ...................................... 62

Certificate of Service ........................................... 63

# TABLE OF AUTHORITIES

## Cases

*Gall v. United States,*
  552 U.S. 38 (2007) ............................................................ 56

*Jackson v. Virginia,*
  443 U.S. 307 (1979) .......................................................... 47

*Old Chief v. United States,*
  519 U.S. 172 (1997) ..................................................... 28, 36

*United States v. Alexander,*
  48 F.3d 1477 (9th Cir. 1995) ............................................. 47

*United States v. Carty,*
  520 F.3d 984 (9th Cir. 2008) ............................................. 56

*United States v. Chea,*
  231 F.3d 531 (9th Cir. 2000) ............................................. 43

*United States v. Curtin,*
  489 F.3d 935 (9th Cir. 2007) ............................................. 42

*United States v. Daniels,*
  653 F.3d 399 (6th Cir. 2011) ............................................. 50

*United States v. Dost,*
  636 F. Supp. 828 (S.D. Cal. 1986) ..................................... 48

*United States v. Ganoe,*
  538 F.3d 1117 (9th Cir. 2008) .................................. 27, 30, 37

*United States v. Gonzalez-Flores,*
  418 F.3d 1093 (9th Cir. 2005) ........................................... 39

*United States v. Hardwick,*
    766 F.3d 1051 (9th Cir. 2014) ........................................... 18, 37, 41

*United States v. Izatt,*
    480 Fed. Appx. 447 (9th Cir. 2012) ................................. 44

*United States v. Jacques,*
    2011 WL 1706765 (D. Vt. May 4, 2011) ......................... 52

*United States v. Kapp,*
    419 F.3d 666 (7th Cir. 2005) .......................................... 28

*United States v. Keith,*
    440 Fed. Appx. 503 (7th Cir. 2011) ............................... 31

*United States v. Kowaleski,*
    593 Fed.Appx. 645, 645-46 (9th Cir. 2015) .............. 30, 31

*United States v. Lemay,*
    260 F.3d 1018 (9th Cir. 2001) ....................................... 45

*United States v. Lohse*, 797 F.3d 515 (8th Cir. 2015) ................. 49, 50

*United States v. Lohse,*
    993 F. Supp. 2d 947 (N.D. Iowa 2014) ........................... 49

*United States v. Manning,*
    56 F.3d 1188 (9th Cir. 1995) ......................................... 44

*United States v. Mellies,*
    329 Fed. Appx. 592 (6th Cir. 2009) ............................... 31

*United States v. Merino-Balderrama,*
    146 F.3d 758 (9th Cir. 1998) .................................... 34, 35

*United States v. Morales-Aldahondo,*
    524 F.3d 115 (1st Cir. 2008) ......................................... 27

*United States v. Nader,*
542 F.3d 713 (9th Cir. 2008) .......................................................... 55

*United States v. Norris*, 428 F.3d 907 (9th Cir. 2005) ....................... 51

*United States v. Overton,*
573 F.3d 679 (9th Cir. 2009) .................................................... 48, 50

*United States v. Polouizzi,*
564 F.3d 142 (2d Cir. 2009) ........................................................... 31

*United States v. Ressam,*
679 F.3d 1069 (9th Cir. 2012) ........................................................ 56

*United States v. Soliman,*
813 F.2d 277 (9th Cir. 1987) .......................................................... 41

*United States v. Stewart,*
420 F.3d 1007 (9th Cir. 2005) ........................................................ 47

*United States v. Tsinnijinnie,*
91 F.3d 1285 (9th Cir. 1996) .......................................................... 44

*United States v. Verduzco,*
373 F.3d 1022 (9th Cir. 2004) ........................................................ 43

*United States v. Wiegand,*
812 F.2d 1239 (9th Cir. 1987) ........................................................ 50

*United States v. Williams,*
291 F.3d 1180 (9th Cir.2002) ......................................................... 41

## Statutes

18 U.S.C. Chapter 110 ..................................................................... 44

18 U.S.C. § 3231 ................................................................................ 1

18 U.S.C. § 3553(a) ................................................................ 14, 15

18 U.S.C. § 2241(c) ..................................................................... 51

18 U.S.C. § 2251(a) ....................................................................... 2

18 U.S.C. § 1201 ........................................................................ 52

28 U.S.C. § 1291 .......................................................................... 1

Pub. L. No. 109-248 .................................................................. 53

## Rules

Fed. R. App. P. 4(b) ..................................................................... 1

Fed. R. Evid. 403 ........................................................................ 27

Fed. R. Evid. 404(b) .................................................................... 42

Fed. R. Evid. 414(a) .................................................................... 45

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. Judgment was entered on October 15, 2015. ER 1-6; CR 110. McCormack filed a timely notice of appeal on October 16, 2015. Fed. R. App. P. 4(b); ER 1073-74; CR 112. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court abused its discretion by admitting into evidence the videos and images McCormack was charged with producing, four Gigatribe internet chat transcripts, and four emails where they were necessary to prove his identity as the perpetrator in each count.

2. Whether the district court properly denied McCormack's motion for acquittal made pursuant to Rule 29 where four images he produced depicting his erect penis positioned near victim Ben were sufficient for a reasonable trier of fact to conclude that the images were sexually explicit.

1

3. Whether the district court properly denied McCormack's motion for acquittal made pursuant to Rule 29 where the government proved that McCormack traveled across state lines and used a telephone to kidnap Ben.

4. Whether McCormack's sentence was substantively reasonable.

## BAIL STATUS

McCormack is serving a term of life imprisonment.

## STATEMENT OF THE CASE

## I.   Procedural History

McCormack was charged in a second superseding indictment with four counts of production of sexually explicit images and two counts of kidnapping.  18 U.S.C. §§ 2251(a) and (e), 1201(a)(1) and (g); ER 154-62; CR 53.

Prior to trial, McCormack moved to exclude the introduction of "evidence other than that relating to the identity of the alleged perpetrator," arguing that anything beyond that was impermissible under Rule 403.  ER 166.  Additionally, he moved to exclude under Rule 404(b) the admission of:  images and videos beyond those charged in the indictment; "evidence of communications with other

individuals, which do not relate to the videos or images referred to in the indictment;" and evidence that he had an interest in child pornography. ER 166-67.

At trial, and over McCormack's objection, the court admitted all of the images and condensed versions of the videos he was charged with producing, four Gigatribe internet chat transcripts, and four emails. ER 541-42 (overruling McCormack's objection to introduction of images) and 646-47 (district court indicating that any introduction of evidence included consideration of the arguments made by McCormack in his pretrial filings); SER 1-26 (Gvt. Exhs. 5, 7, 8, 11, 17, 77, 78, 79, 80, 137, 138, 139, and 140); Gvt. Exhs. 11, 33, 35, 37, 39, 42, 49, 52, 57, 61, 63, 65, 67, 128 [unredacted charged images and videos]).

At the close of the government's case, McCormack moved pursuant to Rule 29 for acquittal on all charges. ER 72, 985-86; CR 79. The court denied the motion. ER 74-75, 77-78; CR 79. The jury then found McCormack guilty on all counts. ER 320-35; CR 86. After considering the evidence in the case, the district court sentenced McCormack to life on each count of kidnapping (to be

served concurrently), 360 months on each count of production of sexually explicit materials (to be served concurrently), and a life term of supervised release on each count.  ER 1-4; CR 109.

## II. From 2008 to 2009, McCormack sexually assaulted two toddlers, produced child pornography depicting his assault of the children, and kidnapped the younger child at least twice.

This case is about the sexual abuse and exploitation of two infants in Bakersfield, California.  From approximately 2008 to 2009, McCormack, a resident of Colorado, visited his friends in Bakersfield and sexually assaulted their then-toddler-aged children, Ben and Elizabeth.  ER 847.  McCormack also produced child pornography that depicted Ben and Elizabeth in multiple places at or near the victims' house:  the yard, nearby hotel rooms, McCormack's truck, and the children's bedroom.  In the course of producing the child pornography, he kidnapped Ben at least twice.

### A. Police caught McCormack abducting Ben in November 2009.

On November 6, 2009, when McCormack lived in Colorado, he visited his friend Andrew in Bakersfield for one night in the house that Andrew shared with his wife and children.  ER 847, 585.

4

McCormack had driven his truck straight through from Colorado to California and then parked it in the alley behind Andrew's house. ER 913. This visit was one of several times that McCormack came to Andrew's house and stayed the night. ER 847-48. Before McCormack visited, he would call ahead and then would sleep on a couch in the family's den. ER 848, 852.

On November 6, 2009, McCormack and Andrew stayed up late in the den playing video games. ER 853, 855-56. Andrew drank beer, while McCormack drank Red Bull energy drinks. ER 853-54. Before going to bed, Andrew left McCormack in the den, took a shower, and then went to check on his children who were already in bed. ER 856.

He discovered his two-year-old son Ben was not in bed and woke up his wife to help look for him. ER 857, 873. Both parents set out on a panicked search for their son, waking up his sister and flipping over furniture. ER 873-74. During the search, they realized that the children's bedroom window was open and the screen removed. ER 874.

Andrew eventually realized McCormack and his truck were also gone.  ER 857-58.  After Andrew called McCormack's cell phone several times, McCormack eventually returned with Ben.  ER 857-58.  Ben was wearing only a diaper and had been driven with no child safety seat.  ER 857-58.  Ben was cold and tired, but did not otherwise show any signs of trauma.  ER 777.  McCormack told his friend and the police that he had taken Ben to a convenience store to get a drink.  ER 773, 859.  The story did not make sense to Ben's parents, and they did not allow McCormack to visit again.  ER 859, 861.

### B. McCormack distributed pornography of Ben and Elizabeth while he was online with an undercover law enforcement officer in 2010.

Approximately seven months later, in June 2010, a Toronto detective was conducting an undercover operation on the peer-to-peer file-sharing website Gigatribe to identify child pornography producers.  ER 536.  The detective engaged in a private chat with McCormack, who was using the username "toddlers."  ER 536.  During the chat, McCormack sent him child pornography depicting a toddler-aged boy whom McCormack called "Ben" and said that he

6

had created the images and videos by abducting "Ben" in the middle of the night and taking him to a hotel without Ben's parents' knowledge.  ER 558-59 (admission), 561 (sharing images), 563 (referring to "Ben").  The detective geo-located the IP address of "toddlers" to Colorado Springs, Colorado, and sent a lead to authorities there.  ER 551, 589.

> **C.  McCormack's online exchange of child pornography led to a search of his computer and email accounts which contained additional child pornography of Ben and Elizabeth.**

Colorado Springs PD subpoenaed the Internet Service Provider for the IP address associated with "toddlers."  ER 591.  It was registered to McCormack.  ER 591.  A search of the house associated with the IP address resulted in the seizure of McCormack's laptop.  ER 595.  The laptop had thousands of images of child pornography, including images of Ben and Elizabeth.  ER 619-21.

Additionally, Colorado Springs officers obtained a search warrant for McCormack's email account, toddlers24@yahoo.com.  ER 811.  The account was registered to a false name, David Brown.

ER 815. Two emails in that account contained explicit images of
Elizabeth, sent on December 2 and 5, 2008. ER 817-20.

### D. In an unrelated investigation, agents found a laptop containing videos and images that depicted McCormack sexually assaulting Ben in a motel room.

In November 2010, Homeland Security Investigations (HSI)
agents in Boston found, on an unrelated suspect's laptop, a series of
videos of a young, toddler boy being sexually abused in a hotel room.
ER 687. The hotel room had a distinctive swirl-patterned carpet.
ER 687. The child pornography became known as the "Swirl Carpet
Series" to the HSI agents who studied the videos in an attempt to
identify the perpetrator and victim. ER 687.

The videos made it difficult to identify the victim and
perpetrator. ER 690. In the series, the perpetrator wore a black
balaclava (a ski mask with openings only for the eyes, nose, and
mouth). ER 687 (discussion of screen shots); Gvt. Exh. 59 (redacted
screen shot from series). The victim was a toddler whose identity
was otherwise unknown. ER 687-88.

Boston HSI agents conducted an extensive investigation to
identify the masked adult male in the Swirl Carpet Video. ER 688

(discussing beginning steps of investigation). They relied heavily on a portion of the audio in one of the videos. ER 298; Gvt. Exh. 42. A television playing in the background of that video offered clues about the abuse. ER 623. HSI learned that what they were hearing was a snippet from a certain television show and a cookie commercial. ER 691. The combination of the two playing in the video was critical. ER 691. HSI learned that the two only aired together on one date: on or about March 28, 2008. ER 695. They believed this was when the video was made. ER 695.

The agents also worked to determine where the video was produced. ER 700-01. They focused on the items they could see in the hotel room, first identifying them and then obtaining a list of all motel and hotel purchasers of the items. ER 696-98 (items studied). The list of purchasers led them to a possible hotel match: the California Best Inn in Bakersfield. ER 702. After canvassing the California Best Inn rooms, a Bakersfield HSI agent identified the particular room depicted in the video. ER 757. She did this by comparing the items in the room, particularly a granite counter top, with items depicted in the Swirl Carpet Series. ER 757. Room

records showed only McCormack rented the room on the night of March 28, 2009. ER 726-27.

The agents checked McCormack's criminal records and learned of Ben's November 2009 abduction. ER 765-66. Shortly thereafter, Ben's parents identified their son in the child pornography. ER 881-82. Ben's parents also later identified their daughter in images found in McCormack's Yahoo email account. ER 882-83.

### E. McCormack produced additional sexually explicit images of Ben and Elizabeth.

In the fall of 2011, after HSI agents identified McCormack from the Swirl Carpet Video, they requested that Colorado Springs police officers conduct a more detailed analysis of his seized laptop. ER 784. This search of the laptop revealed additional internet chats that contained admissions by McCormack of his production of explicit images of Ben and Elizabeth. ER 785. This included the transcript of the conversation the Toronto police officer had with him during the undercover investigation. ER 634-35.

Colorado Springs officers also obtained a search warrant of McCormack's truck. ER 828. Its interior appeared to match the interior of the vehicle depicted in two images of Elizabeth, both of

10

which were sexually explicit and sent by McCormack from his email address. ER 831-32.

Colorado Springs officers also conducted a second search of McCormack's house, resulting in the seizure of personal clothing that appeared to match the clothing of the perpetrator in the Swirl Carpet Video and other explicit images of Ben. ER 789-94.

> **F. Prior to trial, McCormack moved to exclude all images based on his stipulation to all elements of the charged crimes except identity and scienter.**

A six-count, second superseding indictment charged McCormack with producing four series of sexually explicit images and videos and two counts of kidnapping and attempt. ER 154-62. Count one related to images of Elizabeth, count two related to the images of Ben in his crib, count three consisted of three videos and a still image from the Swirl Carpet Series, and count four related to images of Ben outside at night. ER 154-62, 820 (count 1), 620 (count 2); 623-25 (count 3); 629-630 (count 4). Count five related to the kidnapping of Ben when the Swirl Carpet Video was produced. ER 1010. Finally, count six related to the kidnapping of Ben on

November 6, 2009, when McCormack was caught with Ben in his truck. ER 1012.

Before trial, the parties filed numerous motions *in limine*. ER 1088-89 (docket). McCormack moved to exclude introduction of all images and videos except "evidence . . . relating to the identity of the alleged perpetrator," and conditioned this motion upon a stipulation as to other facts he argued would meet the other elements of each charged crime. ER 163-67 (motion), 255-57 (objection at trial); CR 46 (motion). Specifically, McCormack stated he would stipulate to the "the identity of the alleged victims, their ages, the fact that the videos and images depict the sexual exploitation of a minor, as well as a stipulation that the crime of kidnapping occurred on the dates alleged in Counts Five and Six." ER 166. McCormack was unwilling, however, to stipulate to the requisite scienter, which as the government argued to the district court, could not be stipulated to if the identity of the perpetrator was contested. ER 52. He also moved to exclude "any evidence . . . which do[es] not relate to the videos or images referred to in the indictment." ER 167.

The court denied the motion, concluding the contested issue at trial was more than the identity of the perpetrator in the images. ER 56-58. The government also had to prove whether McCormack had the requisite knowledge of committing the conduct charged in each count. ER 56-58. The government argued that he could not contest being the perpetrator (*i.e.,* the identity element) and simultaneously stipulate to having the requisite knowledge because only the perpetrator could stipulate to having the requisite knowledge. ER 55. The court agreed, concluding the images and videos, along with admissions by McCormack about creating those images and videos, were necessary for the government to meet its burden of proof on all counts. ER 56 ("the knowledge aspect . . . that's not being conceded by the defense as I understand it"). In reaching that decision, the court acknowledged that the government had offered to limit the amount of images published to the jury and the duration any video or image was published. ER 57-58 (pre-trial hearing), 541 (renewed objection and ruling during trial). The court expressed a willingness to consider a cautionary instruction. ER 58.

### G. McCormack's PSR correctly calculated his guideline sentencing range at life imprisonment and recommended a sentence of life based on the relevant § 3553(a) factors.

McCormack's presentence investigation report (PSR) correctly calculated his advisory guideline sentence as life imprisonment, and, after reviewing the sentencing factors set forth in 18 U.S.C. § 3553(a), recommended a sentence of life imprisonment. McCormack's total offense level included enhancements for his abuse of a minor under twelve (four levels), for the offense involving the commission of a sexual act (two levels), for distribution (two levels), and for sadistic or masochistic conduct or other depictions of violence (four levels). PSR at 14. The PSR also determined that McCormack had committed obstruction of justice by "willfully provid[ing] false testimony at trial," resulting in a two-level adjustment. PSR at 12. After adjustments for the multiple counts of conviction, McCormack's offense level totaled 55. PSR at 16. However, the maximum level under the Guidelines is 43. PSR at 16 (citing U.S.S.G. § 5A, cmt. n.2).

### H. The court sentenced McCormack to life imprisonment.

At sentencing, the district court adopted the PSR's Guidelines calculations. ER 94. It then considered the factors under 18 U.S.C. § 3553(a), focusing on protection of the public and deterrence. The court focused on McCormack's "targeting [of] very young children" and "encouraging other individuals to commit similar types of violent attacks on other young children." ER 96. It also found that McCormack bragged online about his sexual assault of the children in detail. ER 96. The court found that McCormack's crimes, "including bondage, rape, oral sex, masturbation, and urinating on one of the children[,] really shows something well beyond the heinous nature of a rape. This was an actual humiliation of very, very young children." ER 96-97. The court further observed McCormack's lack of remorse or sympathy. ER 97.

In pronouncing the sentence of life, the court stated:

> In any event, the bottom line in this case . . .
> this is, I agree, in my almost 20 years on the
> federal bench hearing these types of cases,
> probably the most serious that I have seen,
> regrettably, because of the young age of the
> children, the acts of taking advantage of these
> young children, and really the abuse that was

15

> put upon these children, and the bragging and displaying of this to others makes this perhaps one of the most, if [not] the most serious that I have seen in court or have read cases about.
>
> So in this case, I do find that the life imprisonment term is appropriate, and I'll sentence accordingly.

ER 97. The court also imposed a term of life imprisonment on the kidnapping counts and 360 month sentences on each of the four production of sexually explicit image counts to run concurrent with the term of life imprisonment. ER 98.

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion by admitting the charged images and videos, four Gigatribe chats, and four emails. Each was necessary to establish that McCormack was the perpetrator in each count, and McCormack's proposed stipulation was not a viable alternative to the evidence. As a result, a Rule 403 balancing weighed in favor of their admission. Furthermore, the government minimized the emotional impact of showing the necessary evidence in several different ways.

The district court correctly denied McCormack's Rule 29 motions for counts two and six because the government presented

sufficient evidence for a rational trier of fact to find that the essential elements of each crime had been proved beyond a reasonable doubt. In count two, the government presented sufficient evidence for the jury to conclude that the images of the victim were sexually explicit because they involved the lascivious exhibition of McCormack's genitals, the setting was sexually suggestive, they were intended to elicit a sexual response in the viewer, and the victim was portrayed as a sexual object. In count six, the government established the interstate nexus in two ways. First, the government established that McCormack traveled interstate in order to kidnap his victim. Second, the government established that McCormack used the telephone, a facility of interstate commerce, in order to kidnap Ben.

Finally, the life sentence is procedurally sound and substantively reasonable. The court correctly calculated McCormack's guideline range, treated the Sentencing Guidelines as advisory, and listened to and responded to counsels' arguments regarding sentencing. The court did not abuse its discretion when it determined that a life sentence was appropriate based on

McCormack's predatory conduct, lack of remorse, and encouragement of others to commit similar crimes.

## ARGUMENT

I. **The district court did not abuse its discretion by admitting the evidence that was necessary to identify McCormack as the individual that produced the images and videos charged in the indictment and that kidnapped Ben.**

### A.    Standard of Review

This Court reviews for an abuse of discretion the district court's balancing under Federal Rule of Evidence 403.  *United States v. Hardwick*, 766 F.3d 1051, 1055 (9th Cir. 2014).

### B.    The admitted videos and images, Gigatribe chat transcripts, and emails were necessary to establish the identity of the individual that produced the charged videos and images and kidnapped Ben.

McCormack disputes three groups of admitted evidence.  First, he disputes introduction of the charged videos and images. [1]  AOB at 10-18.  Second, he disputes four transcripts of Gigatribe chats that

---

[1] It is unclear if McCormack is also objecting to the redacted copies of the charged images that were also introduced.  *See* AOB at 6-7.  If so, those images were also introduced as Government's Exhibits 34, 36, 38, 40, 50, 62, 64, 66, 68.  Their admission was also proper for reasons discussed herein.

he conducted online.[2]  AOB at 20-22.  Third, he disputes introduction of four emails.  AOB at 21-22.

McCormack argues admission of the disputed evidence contravened Rule 403.  AOB at 10-18 (charged images) and 27-29 (Gigatribe chat transcripts and emails).  In making that challenge, he asserts that the disputed evidence was not necessary to establish the identity of the perpetrator of the charged crimes, and as a result, its admission was unfairly prejudicial.  AOB at 10-18, 27-29.  The challenge is misplaced.  What McCormack construes as non-identity evidence was instead the opposite:  evidence necessary to prove identity.  Therefore, the district court did not abuse its discretion by admitting it.  Reviewing the charged images and videos, along with the two kidnapping incidents, illustrates why.

### 1.    Count One

Count one of the second superseding indictment involves two still images of Elizabeth being sexually exploited and abused by a

---

[2] Notably, the fourth chat was marked twice, once at Exhibit 80 and then again at Exhibits 5, 7, 8, 11 and 17 (which were separate screen shots of portions of the chat).  Thus, there are only four disputed Gigatribe chat transcripts.

pale, Caucasian man in the backseat of a vehicle. Gvt. Exhs. 128, 130. One image depicts her being anally raped. Gvt. Exhs. 128, 130. The face of the perpetrator is not shown in the images.

The images were highly probative of McCormack's guilt. They helped prove he was the perpetrator of the abuse and producer of the images. For example, the jury was asked to view the images to see, among other things, the vehicle seat where Elizabeth was abused and then compare the charged images to the pictures of McCormack's Chevy Silverado. ER 832. This comparison allowed the jury to determine whether the car seat in the images involving Elizabeth was from McCormack's Chevy Silverado and place McCormack at the scene of the crime.

The transcripts and emails were also necessary to establish the perpetrator's identity. For example, in one Gigatribe chat McCormack admitted, speaking through the screenname "toddlers," that he abused his friend's two children, aged "1 and 3." SER 5 (Exh. 77.). In the same chat, McCormack confirmed the older of the two siblings was a girl and admitted having anal sex with her. SER 5 (Exh. 77.)

The disputed emails were also probative of the identity element. The government needed to prove that McCormack controlled the toddlers24@yahoo.com account registered to David Brown. The government demonstrated that the same person used two email accounts: toddlers24@yahoo.com and shawns525@yahoo.com. The jury could infer that the two email accounts were controlled by McCormack because (1) an email sent by toddlers24@yahoo.com said that toddlers24@yahoo.com could also be reached at shawns525@yahoo.com, and (2) the account information and content of information sent from shawns525@yahoo.com was consistent with Shawn McCormack. SER 19-21 (Exhs. 133, account info). Specifically, the account shawns525@yahoo.com listed "shawn mccormack" as the account holder. SER 22-26 (Exhs. 137-140). Additionally, one of the disputed emails contained a statement by McCormack about his access to a small child (Ex 138), and two contained statements about his interest in the explicit act of urinating on very small children (SER 22-24 (Exhs. 139-140)), information borne out in the images he was charged with producing. Thus, the four disputed emails were highly probative.

### 2.    Count Two

Count two involves four still images showing Ben asleep in his crib while a Caucasian male wearing a red t-shirt places his erect penis near Ben's head.  Govt. Exhs. 33, 35, 37, 39.  The face of the perpetrator is not in the images.  Govt. Exhs. 33, 35, 37, 39.

The charged images were highly probative of who produced them.  For example, the red t-shirt in the images is similar to a red shirt recovered from McCormack's house.  ER 793 (side by side comparison shown to jury).  Thus, the jury needed to see both to make a comparison and determine whether the government had correctly identified who was wearing the red t-shirt in the images. ER 793-94.  After their initial production to the jury, the government showed only redacted copies of the images.  ER 621-22.

Additionally, the Gigatribe chat transcripts were probative of the identity of the perpetrator in the images because the chats contained admissions that McCormack had access to Ben and abused him.  For example, in Exhibit 77, McCormack discussed his victims, asserting that that he "sneak[s] them out at night," that his victims are "1 and 3," and that he "do[es] anal with him."  SER 5-7 (Exh. 77).

He specified that the "3yr old is a girl." SER 5 (Exh. 77). He also went on to say that the parents did not know. SER 6 (Exh. 77). In Exhibits 78, 79, and 80, he made similar admissions, adding new inculpatory statements such as an admission, in response to a direct question, that he was the person wearing the mask. SER 8-18.

### 3. Count Three

Count three involves three videos and one image from the "Swirl Carpet Series." ER 686-87. At trial, the government introduced abbreviated, 30 second clips of each minutes-long video. ER 623, 626, 627 (clips played at trial). Additionally, the government did not play the audio of the videos, which included Ben "crying very loudly." ER 624, 682, 690.

The videos show a pale, Caucasian male sexually abusing Ben through acts of anal penetration, oral sex, the lascivious exhibition of Ben's and the perpetrator's genitals, and the sadistic and masochistic conduct of urination on Ben. ER 623-28 (description by witness of videos). The perpetrator is masked in each video. ER 623-28. The image depicts the victim in the same location and appears to be a still from one of the videos. ER 625.

The items depicted in the Swirl Carpet Series were central to determining who produced the videos and the image in that series. Law enforcement officers went to extraordinary lengths to identify the individuals depicted in the videos. At trial, the government introduced evidence detailing the investigation and analysis so the jury could assess the reliability of the identification. For example, the jury was asked to compare items seized from McCormack's home with the items worn by the perpetrator in the videos. ER 790 (side by side comparison). The jury was also able to compare the carpet, bedspread, bathroom, and granite counter in the videos and images with the room McCormack stayed at in the California's Best Inn. ER 697-99. Each comparison required the jury to have seen portions of the Swirl Carpet Series videos.

Additionally, the admissions by McCormack in the Gigatribe chats were probative of who produced the Swirl Carpet Series. His statements in the chats matched the unique abuse depicted in the videos. For example, the videos depict the acts of taping Ben up with electrical tape and urinating on him while wearing a black mask. ER 624, 626. The jury needed to see this conduct to compare it to the

admissions McCormack made when he bragged that he had urinated on a boy named "Ben" after taking "Ben" to hotel room. SER 11 (Exh. 78), *see also* SER 5-18 (77, 78, 79, 80).

Finally, after their initial production to the jury, the government showed only redacted copies of the images.

### 4.    Count Four

Count four charges production of four still images of Ben laying outside on grass. ER 629-31 (describing admitted images). The face of the perpetrator is not shown in any of them. In three images, an adult male's erect penis is seen near Ben, along with some unique clothing worn by the perpetrator, including a cloth belt with a silver buckle. ER 630; Govt. Exh. 64. Two images also show the lascivious exhibition of Ben's nude genitals. Govt. Exhs. 65, 67.

The items of clothing, including the belt, were recovered from McCormack's residence. ER 791-92 (jury shown side by side comparisons). The images were probative of identity because they allowed the jury to make the connections between the clothing seen in the images and McCormack. Similarly, the Gigatribe chat

transcripts were necessary to confirm his access to, and abuse of, Ben.

Finally, after their initial production to the jury, the government showed only redacted copies of the images.

### 5.    Counts Five and Six

Counts five and six charge McCormack with kidnapping Ben on two occasions.  Specifically, count five charges him with kidnapping Ben on or about the night the Swirl Carpet Series was produced, in March 2009.  Count six charges him with kidnapping Ben on November 9, 2009, when McCormack was caught with Ben in his vehicle.

The charged images, videos and Gigatribe chat transcripts were necessary to identify McCormack as Ben's kidnapper.  All four Gigatribe chat transcripts contain admissions by McCormack about taking Ben to a motel room multiple times without the permission of Ben's parents.  SER 5-18 (Exhs. 77-80).  The images and videos charged in count three (the Swirl Carpet Series), depict Ben while he was kidnapped and taken to a motel room without his parents' permission.  ER 1010.  They also depict his kidnapper, who was

wearing a mask in the videos. ER 624. They too are direct evidence

that Ben was kidnapped, that McCormack kidnapped him, and that

McCormack made true admissions in the Gigatribe chats.

### C. The probative value of the disputed evidence weighed in favor of its admission under Rule 403.

McCormack asserts that the district court misapplied Rule 403

in admitting the disputed evidence because his proposed stipulation

provided a viable alternative to the challenged evidence. He is

incorrect. Rule 403 supported the district court's admission of the

disputed evidence.

### 1. Rule 403 does not bar incriminating evidence merely because it is disturbing or when a stipulation regarding such evidence has been proposed.

Rule 403 requires the exclusion of evidence that creates unfair

prejudice. Fed. R. Evid. 403. It does not require, however, that the

district court exclude prejudicial evidence or "scrub the trial clean of

all evidence that may have an emotional impact." *United States v.

Ganoe,* 538 F.3d 1117, 1124 (9th Cir. 2008), *cert. denied,* 129 S. Ct

2037 (2009), (citing *United States v. Morales-Aldahondo*, 524 F.3d

115, 120 (1st Cir. 2008)). Incriminating, disturbing evidence does not

equate to unfair prejudice. *United States v. Kapp*, 419 F.3d 666, 677 (7th Cir. 2005) ("Evidence is not to be excluded simply because it might be graphic or disturbing . . . and if evidence is probative of an issue relevant to an element of the offense, it must be admitted in all but the most extreme cases.").

In limited instances, the possibility that a stipulation was proposed as a substitute for a piece of evidence may indicate that the admission of such evidence creates unfair prejudice. *Old Chief v. United States*, 519 U.S. 172 (1997). But not in all instances. District courts must still weigh the evidence and the stipulation consistent with Rule 403 to determine if its admission amounts to unfair prejudice. *Id.*

The Supreme Court's decision in *Old Chief* provides guidance for such determinations. There, the Court considered whether Rule 403 required the government to stipulate to a defendant's prior conviction in a felon in possession of a firearm case. The Court compared the viability of the stipulation as an alternative to the facts themselves, concluding first that "the mere fact that two pieces of

evidence might go to the same point would not, of course, necessarily mean that only one of them might come in." *Id.* at 183.

The alternatives must be weighed. On the one hand, the district court must consider the importance of allowing the prosecution to present its case. As the Court explained in *Old Chief*, there is a "familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id.* at 186-87. Moreover, "the prosecution's burden of persuasion needs evidentiary depth to tell a continuous story," and the ability of the prosecution to meet its burden could be improperly impinged when "interrupted by gaps of abstraction" and "missing chapters." *Id.* at 189-90. On the other hand, the district court must consider the prejudicial effect of the proffered evidence.

In *Old Chief*, the Court concluded a continuous story could be told with the stipulation because the "point at issue [was] a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal

29

behavior charged against him." *Id.* Thus, the proposed stipulation was a viable alternative. But the Court was careful to note that the stipulation was viable in *Old Chief* because the facts underlying a felony conviction did not have a "multiple utility" in a felon in possession case. *Id.* at 190. The fact of felony conviction in a felon in possession case "goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense." *Id.* at 191.

Courts have reached different outcomes in child pornography cases where the same issue arose. Specifically, in addressing defendants' attempts to "stipulate away" evidence in child pornography cases, this Court has allowed the government to present its case, including the images of sexually explicit conduct, where the stipulation was not a viable alternative. *Ganoe*, 538 F.3d at 1124, (affirming district court's Rule 403 analysis and decision permitting jury to see the charged images of child pornography in a receipt and possession case, finding defendant's "proffered stipulation simply did not 'supply evidentiary value at least equivalent to what the Government's own evidence carried."); *United States v. Kowaleski*,

593 Fed.Appx. 645, 645-46 (9th Cir. 2015) (unpub.) (affirming district court's decision under Rule 403 to allow jury to view child pornography despite the defendant's proposed stipulation because the images were relevant to proving the defendant's knowledge of the files, that he acted knowingly, and to undercut the defendant's asserted theory that a roommate had used the defendant's computer to download and store the files).

Other circuits have done the same. *United States v. Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009) (affirming conviction where jury was shown, over defendant's objection, each image or video charged in 23 count indictment, despite defendant's stipulation that he had received and possessed child pornography); *United States v. Mellies*, 329 Fed. Appx. 592, 600-01 (6th Cir. 2009) (unpub.) (finding admission of 1,600 images out of 11,000 in defendant's collection not improper despite defendant's admission that the images portrayed child pornography); *United States v. Keith*, 440 Fed. Appx. 503, 507 (7th Cir. 2011) (unpub.) (affirming conviction where jury was shown, over defendant's objection, 32 of the 4,242 child pornography images

31

found on the defendant's computer, despite the defendant's offer to stipulate that the images constituted child pornography).

### 2. The district court properly balanced the probative value of the evidence against the unfair prejudice when considering McCormack's proposed stipulation.

The district court's decision to admit the disputed evidence properly balanced the evidence and factors under Rule 403.

### a. There were no alternatives to the disputed evidence.

McCormack argues that the government could have proven the identity of the perpetrator with equally probative alternative evidence. AOB at 15-17 (charged images) and 30-32 (Gigatribe internet chats and four emails). This argument is misplaced. The combination of the videos and images, Gigatribe chats, and emails was integral in proving the government had correctly identified McCormack.

As noted above, McCormack's face did not appear in any of the charged images, including those of Ben at the hotel. Thus, the government could not simply ask the jury to compare the face of the perpetrator in each video or image with McCormack. Additionally,

McCormack did not admit to the charged conduct, except when he used Gigatribe under a screenname. Thus, the government needed the charged images to prove that the Gigatribe chats were true admissions rather than false bragging. Similarly, the government needed the Gigatribe chats and emails to confirm that McCormack was the individual that had produced videos and images of Ben and Elizabeth, as well as who had kidnapped Ben.

McCormack's suggested alternatives to the videos and images are not viable. For example, he suggests that the "extensive Gigatribe chats," motel records, and McCormack's possession of child pornography on his laptop was sufficient—without the videos and images—to establish that he produced the videos and images. AOB at 15-16. They were not. The government needed the images to rebut any argument by McCormack that the chats were merely false bragging (which he argued at trial), to prove that it was McCormack not someone impersonating him that was at the hotel (which McCormack argued at trial), and that he was more than merely a collector of child pornography (which McCormack argued at trial). ER 518, 1016 (arguing McCormack was a collector, not producer);

522, 1018-19 (arguing another person was at hotel with copy of McCormack's license); 920-21 (McCormack testifying he downloaded charged images on Gigatribe and chats bragging about molesting Ben were his attempts to act like he had access to a child to persuade others to send him child pornography).

The same is true for the suggested alternatives to the Gigatribe chats and four emails. As an initial matter, even McCormack concedes the probative value of the Gigatribe chats. AOB at 16. The Gigatribe chats are McCormack's admissions that he was the producer and kidnapper, and thus are highly probative of his guilt. The emails were equally important in the context of the charged conduct for a similar reason.

Contrary to McCormack's assertions, this Court's decision in *Merino-Balderrama* does not undermine the district court's evaluation of the alternatives here. AOB at 12-13 (citing *United States v. Merino-Balderrama*, 146 F.3d 758 (9th Cir. 1998)). That case involved possession of child pornography where it was uncontested that the defendant never had watched the video tapes. Despite this and the defendant's willingness to stipulate to all

34

elements of the case except for his knowledge of the content of the videos, the government showed the jury "several minutes from each of six of the seven films." *Id.* at 761-62. This Court found an abuse of discretion because the defendant had never seen the content of the videotapes, and there was a viable alternative to showing the video. *Id.* at 761. The government could have offered into evidence the box that held the videotape, which indicated the nature of the content of the videotape. Because the defendant had never seen the videotapes, but had seen the boxes holding the videotape, this Court held that the probative value of the video was matched by alternative and less prejudicial evidence. *Id.*

Here, as discussed above, there was no viable alternative like that available in *Merino-Balderrama*. The government had no alternative but to show parts of the child pornography that McCormack produced and it took care to limit the content shown to the jury by showing only small clips of the videos, playing the videos without sound, and referring to redacted versions or videos and screen shots where possible.

### b. The proposed stipulation and exclusion of the disputed evidence would have resulted in unjustified gaps and missing chapters in the prosecution's case.

Unlike *Old Chief*, McCormack's case and proposed stipulations had nothing to do with a procedural fact that was ancillary to his criminal conduct, like a prior conviction. Instead, this case focused on proving the identity of an individual that repeatedly disguised himself while sexually abusing two young children. Proving McCormack was the perpetrator required the collection of a large volume of circumstantial evidence. Eliminating substantial portions of that evidence would have resulted in the kind of gaps and missing chapters that *Old Chief* warned against. 519 U.S. at 190-91.

### c. The proposed stipulation was incomplete.

Each of the charged crimes included a scienter element. The government had to prove that McCormack knew the images and videos would be used in interstate commerce and that McCormack knowingly and willfully kidnapped Ben. In some parts of his opening brief, McCormack acknowledges that he refused to stipulate to both elements, while in other parts he appears to argue the opposite.

*Compare* AOB at 12 ("though in his [case here] both the scienter and identity elements remained") *with* AOB at 32 ("he agreed to stipulate to all elements save for identity"). Notwithstanding McCormack's position on appeal, prior to and at trial McCormack did not, and could not, stipulate to the scienter elements because he refused to stipulate to identity.[3] As a result, McCormack's proposed stipulation was incomplete.

This Court's decision in *Ganoe* is instructive. 538 F.3d at 1123. There, the defendant would not stipulate to having knowledge that he possessed child pornography, but would stipulate that the files he was charged with possessing constituted child pornography. *Id.* The defendant argued that the images should not have been shown to the jury because of his proposed stipulation. This Court disagreed. It held that the stipulation was no substitute for evidence of the defendant's knowledge of the nature of the downloaded images. *Id.*

---

[3] Contrary to McCormack's assertions, *United States v. Hardwick*, 766 F.3d 1051, 1055-56 (9th Cir. 2014), also supports the district court's decision because of McCormack's incomplete stipulation offer. *See* AOB at 31-32. Here, like in *Hardwick*, the government had to prove McCormack's knowledge of the crimes charged and limited the amount of extrinsic acts it introduced.

Here, the court's decision was consistent with *Ganoe*. McCormack would not stipulate to the knowledge element, which weighed in favor of admitting evidence that was probative of the element—regardless of a willingness to stipulate to other elements.

> ### d. The government substantially narrowed the amount of potentially prejudicial evidence introduced at trial.

The government's case-in-chief presented evidence that was limited and narrowly drawn from a vast pool of incriminating evidence obtained in the investigation. Principal among the narrowing effort was the government's decision to show only clips of each video, and after displaying an explicit image, only show a redacted copy. *See, e.g.,* ER 623-24, 630, 761, 1009 (using redacted images). The government also did not play the sound with the video clips which contained the victim's cries. ER 682. Additionally, the government chose to forego admitting other probative evidence in order to narrowly tailor the order of proof. For example: the government did not seek to admit:

- additional sexually explicit images of Ben and Elizabeth,

- additional Gigatribe chats in which McCormack expresses a sexual interest in children,

- any evidence that indicated McCormack had more than 4,000 images of child pornography on his laptop, and

- any evidence that McCormack was suspected of sexually abusing other very young children in Colorado.

ER 53-54 (MIL hearing).

### D. Assuming arguendo that admitting the disputed evidence was an abuse of discretion, it was harmless error.

The government does not concede that there was any error in admitting the disputed evidence. Yet, if this Court disagrees and finds an abuse of discretion, then it was harmless error. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1100-01 (9th Cir. 2005) (finding harmless error where "it is more probable than not that the error did not affect the verdict"). Here, the disputed evidence did not significantly reduce the possibility of acquittal. There was additional evidence offered by the government that was probative of his guilt, including McCormack's testimony, both on direct and under cross-examination. For example, McCormack admitted that he collected

child pornography including pictures of Ben and Elizabeth, he used Gigatribe under the name "toddlers, his debit card was used in Bakersfield on the day the Swirl Carpet Series was produced, and that the signature used to check in at the motel where the Swirl Carpet Series was made was the same as his own signature. ER 920-21 (collecting child pornography and using name "toddlers"), 931 (in Bakersfield), and 940 (signature comparison). Additionally, the parents of Ben and Elizabeth testified that they did not give McCormack permission to take their children out of the house. ER 860, 879. Against this evidence, the likelihood of an acquittal was not reduced by the admission of the disputed evidence.

### E. Alternatively, the Gigatribe chats and four contested emails were admissible under Rules 404(b) and 414.

McCormack argues that the Gigatribe chat transcripts and four disputed emails were also not admissible under Rule 404(b). AOB at 24 (specifically identifying Exhs. 5, 7, 8, 11, 17, 77, 78, 79, 80, 137, 138, 139, and 140). As discussed above, the disputed Gigatribe chats and four emails were direct evidence of the crimes charged—not "other acts"—and were necessary to meet the government's burden of

proof.  Additionally, the Gigatribe chat transcripts and four emails were admissible under Rules 404(b) and 414.

### 1.    Standard of Review

This Court reviews for abuse of discretion the district court's admission of prior acts evidence.  *United States v. Hardwick*, 766 F.3d at 1051.  This Court reviews for an abuse of discretion the district's court balancing under Federal Rule of Evidence 403 of the probative value of the prior acts evidence against the danger of unfair prejudice to the defendant.

### 2.    The Gigatribe chats and four emails were inextricably intertwined with evidence of the charged crimes.

In addition to being direct evidence of the charges in this case, the Gigatribe chat transcripts and four disputed emails were inextricably intertwined with the other evidence in this case. Evidence of other unlawful conduct is admissible if it is "inextricably intertwined" with evidence concerning the crime charged.  *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987).  And, evidence is "inextricably intertwined" if it constitutes a part of the transaction that forms the basis for the criminal charge or is necessary to permit

the government to offer a coherent story regarding the crime. *See United States v. Williams*, 291 F.3d 1180, 1189 (9th Cir.2002), *overruled on other grounds by United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007). Here, the above evidence was necessary to permit the government to offer a coherent story of the crimes and, in particular, who committed the crimes. The Gigatribe chats, when introduced and compared to the charged images, were admissions of guilt. Similarly, the four emails showed that McCormack controlled toddlers24@yahoo.com.

### 3. The disputed evidence is admissible under Rule 404(b).

Rule 404(b) "is a rule of inclusion — not exclusion." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc). It excludes the admission of "other crimes, wrongs, or acts" to prove action in conformity therewith, but it allows for such evidence as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). "Acts" under Rule 404(b) need not be bad acts, so long as the acts are "relevant in such a way as to avoid being nothing more than character or propensity evidence." *Curtain*, 489 F.3d at 944.

Furthermore, other crimes, wrongs, or acts under Rule 404(b) can occur before or after the charged criminal conduct. *United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000).

Evidence can be admitted under Rule 404(b) if four conditions are met. First, the evidence proves a material point; second, the other act is not too remote in time; third, the evidence is sufficient to show that the defendant committed the other act; and fourth, that the act is similar to the offense charged, in cases where knowledge and intent are at issue. *United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004).

All four conditions were met here. First, the Gigatribe chats and four emails relate to material points, namely the elements of the charged offenses and the identity of McCormack as the perpetrator. The evidence also relates to knowledge, motive, opportunity, intent, preparation, plan, absence of mistake, and lack of accident.

Second, the acts largely relate to the same time period charged in the indictment, which is January 2007 to July 2010. With respect to the four emails, which were sent from the first half of 2011, those communications are at most 10 months outside of the charged time-

frame. This Court has permitted other crimes, wrongs, and acts far more remote in time. *See, e.g.*, *United States v. Izatt*, 480 Fed. Appx. 447, 450 (9th Cir. 2012) (unpub.) (admitting similar conviction in drug case eight years outside the charged offenses under Rule 404(b)); *United States v. Tsinnijinnie*, 91 F.3d 1285, 1289 (9th Cir. 1996) (admitting evidence of physical and sexual abuse that occurred two years outside of the charged sexual abuse offenses); *United States v. Manning*, 56 F.3d 1188, 1197 (9th Cir. 1995) (admitting conviction from eight years outside of charged conduct to show defendant's knowledge regarding explosive devices). Third, when looking at all of the evidence, it is sufficient to show that McCormack was the person sending the emails and engaged in the Gigatribe chats. Fourth, the acts also are similar to the offenses charged in that they relate to the comments on and distribution of the charged images and tie McCormack to the crime scenes. The acts also show that McCormack was behind the computer and email accounts making incriminating statements.

### 4. The disputed evidence is admissible under Rule 414.

Under Rule 414, the district court may admit evidence of other "child molestation," which includes any conduct prohibited by 18 U.S.C. Chapter 110 involving child pornography offenses and the attempt or conspiracy to engage in such offenses. *See* Fed. R. Evid. 414(a), (d)(2)(B), and (F). In considering whether the evidence should be admitted under Rule 414, a court should consider several factors, including (1) the similarity of the acts to the acts charged; (2) the closeness in time of the acts to the acts charged; (3) the frequency of the acts; (4) the presence or lack of intervening circumstances; and (5) the necessity of the evidence beyond the testimonies already offered at trial. *United States v. Lemay*, 260 F.3d 1018, 1028 (9th Cir. 2001).

The Gigatribe chat transcripts and four emails meet this criteria. First, the evidence is similar to the charged acts because it is either an admission of the charged conduct or, with regard to some of the emails, at the very least an admission of an interest in such conduct. Second, as discussed with regard to Rule 404(b), the evidence is sufficiently close in time to the charged offenses; in fact,

45

the evidence largely overlaps with the charged offenses. This Court has admitted Rule 414 evidence that occurred far more remote in time. *See Lemay*, 260 F.3d at 1022-23, 1028 (admitting Rule 414 evidence from eight years outside of the charged offense). As to the third factor, McCormack engaged in frequent prior acts relating to the production and distribution of child pornography and discussions of producing images over Gigatribe and/or over email. The fourth and fifth criteria are also met because there are no intervening circumstances and such evidence was needed to establish McCormack as the perpetrator of the charged offenses.

## II.   The district court's denial of McCormack's Rule 29 motion was proper.

McCormack argues that his Rule 29 motion should have been granted with regard to two counts. First, he asserts that there was insufficient evidence to support the jury's verdict regarding the images charged in count two, which depict Ben near a male's penis. Second, he challenges count six, arguing that the government failed to introduce sufficient evidence that demonstrated "the use or involvement of any instrumentality or movement in or affecting

interstate commerce" in the kidnapping of Ben in November 2009.

AOB at 34-35.  Both arguments fail.

## A.    Standard of Review

When a claim of sufficiency of the evidence is preserved by making a motion for acquittal at the close of the evidence, this Court reviews the district's denial of the motion *de novo*.  *See United States v. Stewart*, 420 F.3d 1007, 1014 (9th Cir. 2005).  There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In determining whether there is sufficient evidence to support the conviction, the Court "must respect the province of the jury to ascertain the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict."  *Stewart*, 420 F.3d at 1015 (citation omitted).  In conducting this review, this Court looks at all of the evidence at trial, including

the evidence presented by the defendant. *United States v. Alexander*, 48 F.3d 1477, 1490 n.10 (9th Cir. 1995).

### B. Sufficient evidence was introduced by the government during its case-in-chief to support a finding of guilt on counts two and six.

#### 1. The images charged in count two are sexually explicit.

McCormack argues that the images charged in count two are not sexually explicit under Section 2251(a). AOB at 38-41. In these images, McCormack poses his erect penis near his sleeping victim. Govt. Exhs. 33, 35, 37, and 39. Contrary to McCormack's assertion, there was sufficient evidence for the jury to determine that the images were sexually explicit.

This Court has relied upon the so-called *Dost* factors to determine if an image is sexually explicit. *United States v. Overton*, 573 F.3d 679, 686 (9th Cir. 2009) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)). Every *Dost* factor need not apply for an image to be sexually explicit. *Id.*

Applying the *Dost* factors, the Eighth Circuit recently concluded that images of a defendant placing his flaccid penis near a sleeping child are sexually explicit under Section 2251(a) in *United*

48

*States v. Lohse*.[4]  797 F.3d 515, 522-23 (8th Cir. 2015).  In *Lohse*, the defendant photographed his sleeping victim while he displayed his genitals near her in charged images and on her in some charged images.  *Id.* at 518.  He argued that the conduct was not sexually explicit, and even if it was, the victim was not used to engage in that conduct, but was instead merely present.  *Id.* at 520.  The Eighth Circuit held that three of the *Dost* factors applied:  "the setting of the images was sexually suggestive; the images were intended to elicit a sexual response in the viewer; and [the victim] was portrayed as a sexual object."  *Id.* at 522.

This Court should reach the same conclusion here.  As in *Lohse,* the second, sixth, and seventh *Dost* factors are met because the setting of the images is sexually suggestive, the images are intended to elicit a sexual response from the viewer, and the images depict the minor as a sexual object.  Here, the setting of the images is sexually suggestive because the images depict Ben in his bed, sleeping, and near another person's erect penis being held.  *Cf.United States v.*

---

[4] The lower court provided detail about each image.  *United States v. Lohse*, 993 F. Supp. 2d 947, 950 (N.D. Iowa 2014).

*Daniels*, 653 F.3d 399, 407-08 (6th Cir. 2011). Additionally, the photographs depict Ben as a sexual object. Although Ben is asleep, a rational jury could conclude that McCormack photographed Ben with the purpose of displaying him as a sexual object. *See Lohse*, 797 F.3d at 521 (observing "Lohse quite literally used K.S. as a sexual object" because the victim was used as an "inanimate body for Lohse to act upon in exhibiting his genitals").

The pictures are also intended to elicit a sexual response in the viewer. In determining whether a picture is intended to elicit this response, this Court looks at the photographer's, rather than the child's, intended effect on the viewer. *Overton*, 573 F.3d at 688. As this Court has held, "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles." *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987). Here, after creating the pictures that McCormack now argues do not constitute child pornography, he shared them with "toddlercumdaddy," an undercover detective posing as another pedophile, while he chatted with him about sexually abusing

children.  *See* SER 1-4 (Gov. Exh. 5, 7, 8, 17); Govt. Exh. 11.  This is

evidence that McCormack intended to elicit a sexual response with

the photographs.

Finally, McCormack's reliance upon *United States v. Norris* is

misplaced.  428 F.3d 907, 911 (9th Cir. 2005); AOB at 41.  *Norris* did

not involve child pornography.  In *Norris*, this Court instead

considered the requirements of aggravated sexual abuse under 18

U.S.C. §§ 2241(c) and 2246(2)(A).  The case did not involve any

federal child pornography statute or any case law interpreting the

meaning of definitions pertinent to McCormack's case.

### 2. The government established the interstate element of the kidnapping charge in count six.

McCormack challenges his conviction on count six by focusing

on the interstate nexus element of kidnapping.  AOB at 43-49.  To

meet this element, the government had to establish that either

(i) McCormack traveled in interstate or foreign commerce; or

(ii) McCormack used the mail or any means, facility, or

instrumentality of interstate or foreign commerce in committing or in

furtherance of commission of the offense.  ER 310 (citing Ninth Cir.

Model Crim. Jury Instr. 8.114).  The government established this two different ways.  First, it demonstrated that McCormack traveled from Colorado to California, and second, that he also used a facility of interstate commerce to abuse his victims.

Section 1201 provides that kidnapping may be established when the defendant moves in interstate commerce in order to commit a kidnapping.  *See* 18 U.S.C. §1201.  McCormack ignores this language on appeal.  AOB at 43.  He overlooks Congress's broadening of the kidnapping statute in 2006 to allow for a defendant's movement in interstate commerce to establish federal jurisdiction.  In 2006, as part of the Adam Walsh Act, Congress amended the statute in order to expand it to include situations such as McCormack's where an offender moves in interstate commerce.  *See United States v. Jacques*, 2011 WL 1706765, *4-5 (D. Vt. May 4, 2011) (unpub.) (describing the various amendments to the federal kidnapping statute).  Before 2006, Section 201(a)(1) punished kidnapping when "the person is willfully transported in interstate or foreign commerce."  18 U.S.C. §1201 (1996).  This referred to only the victim's movement.  Congress' 2006 amendment to § 1201(a)(1)

added the language: "or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 213, 120 Stat 587 (2006). This recent change in the law explains why, as McCormack points out in his brief, Ninth Circuit cases have almost exclusively relied on a victim crossing state or foreign borders. Until the 2006 amendment, that was the only way to obtain federal jurisdiction in a kidnapping case. The plain language of the statute shows that this is no longer the case.

Drawing rational conclusions and interpreting the evidence in a light that is favorable to the jury's guilty verdict, the evidence proved that McCormack traveled from Colorado to Bakersfield, California, to kidnap Ben. McCormack's actions the night of the kidnapping would allow a reasonable juror to conclude that when McCormack arrived in Bakersfield, he already knew that he intended to kidnap Ben. On November 6, 2009, McCormack drove straight from Colorado to Bakersfield. ER 913. He parked in the alley behind the house

because he knew that it would be easier to escape detection by going through Ben's window and exiting through the backyard. ER 852. Knowing that he was not going to sleep that night, he drank a Red Bull and waited for his friend to go to sleep. ER 528. Then, following his plan, he took Ben from the bed where he was sleeping, left through the window, and drove off in his truck, probably towards a motel or some other private place, but certainly not to a convenience store to buy soda as he had told the police. ER 531, 851-52.

McCormack's Gigatribe chats describing his abuse of Ben and his obstructive testimony corroborate this interpretation of events. At trial, McCormack testified that it was not him in the child pornography that he was charged with producing and that he did not take the photographs or create the videos. ER 903. The jury did not credit McCormack's testimony. As a result, the jury could have similarly found McCormack's explanation about the purpose of his visits to lack credibility, and instead reached the conclusion that the true purpose was to abduct the children. McCormack's bragging about Ben's abduction in the Gigatribe chats support such an inference.

The government met the interstate element for a second reason, too. Evidence was admitted that allowed the jury to find that the jurisdictional element of kidnapping was met because McCormack used facilities or instrumentalities of interstate commerce in order to commit the offense, namely a telephone. A telephone is an instrumentality of interstate commerce. *Cf.United States v. Nader*, 542 F.3d 713, 722 (9th Cir. 2008) (construing term in 18 U.S.C. § 1952). A reasonable interpretation of the evidence presented at trial is that McCormack used a telephone to gain access to Ben. Without access to Ben, McCormack could not have committed the offense. Ben's father testified that McCormack would call first before spending the night: "He'd call. He lived and worked out of town. He'd want to hang out and have a place to stay the night at." ER 848. Asked whether McCormack would call prior to coming over to spend the night, Ben's father testified: "Yeah, usually he'd call me a day or so in advance." ER 848. McCormack similarly testified, stating "Maybe once every three, four months when I'd be passing through or I'd have enough time off from work, I'd give him a

call and see if he was going to be around or wanted to hang out." ER 903.

Because the government established federal jurisdiction for McCormack's kidnapping in count six in two ways, the district court properly denied McCormack's Rule 29 motion.

### III. The district court did not abuse its discretion by imposing a sentence that included a term of life imprisonment.

#### A. Standard of Review

This Court reviews the substantive reasonableness of the district court's sentence for an abuse of discretion. *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012). Only a procedurally erroneous or substantively unreasonable sentence will be set aside. *Gall v. United States*, 552 U.S. 38, 46 (2007). Procedural error includes failing to explain the sentence, including deviation from the Guidelines range. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008).

#### B. McCormack's offense conduct warranted a guideline sentence that included life imprisonment.

The district court imposed a sentence within the Guidelines range, which was a term of life imprisonment. ER 94 (calculating

offense level).  McCormack does not dispute this calculation of the

guideline range, but he contends that his sentence is substantively

unreasonable.  AOB at 52.  He argues that the court's explanation of

the sentence confirmed its "clear error in judgement."  AOB at 52-53.

The argument is misplaced.

The court provided a thorough and unemotional explanation of

its consideration of McCormack's crimes and personal history.  It also

responded directly to McCormack's arguments at sentencing.  For

example, at the sentencing hearing, McCormack's counsel told the

court that McCormack "adamantly" denied his guilt although he did

agree that he "has been involved in issues concerning child

pornography."  ER 83.  The defense requested that in sentencing

McCormack, the district court only consider the crimes that had been

proved to the jury, and not evidence that McCormack had abused

and filmed two more toddler-aged children in Colorado before his

arrest in the instant matter, as discussed in the PSR.  ER 83.  The

court then granted McCormack's request to strike and agreed not to

consider evidence of his sex offenses in Colorado.  ER 83.

McCormack also asked the district court to consider a sentence

around the 300 to 360 month range, arguing that "a sentence of life . . . as everyone knows in the federal system . . . constitutes a sentence of life without the possibility of parole," and McCormack "should not be subject to a sentence which he could have been subject to if he had killed one of these children involved." ER 84-85.

After listening to McCormack's and the government's arguments, the district court assured McCormack: "I can certainly understand McCormack not admitting culpability in any way, before, during, or after the case for a number of reasons . . . it may not be in his best interest to perhaps make any admissions. Whatever the reasons, I don't fault Mr. McCormack for not accepting responsibility, if you will." ER 90. He also told McCormack: "The other thing is, the Courts are supposed to be objective, and I plan to be . . . I'm going to take the basic facts and apply the law that I find appropriate." ER 90.

After acknowledging the "advisory sentencing guidelines" and that the guidelines "were just one factor that the court is required to consider under 3553(a)," the district court held that the offense

conduct was "clearly . . . a serious offense, perhaps one of the most egregious and serious offenses" and

> in my almost 20 years on the federal bench hearing these types of cases, probably the most serious that I have seen . . . possibly short of an actual homicide with intent, and I'm not going to get into details as far as life without possibility of parole or death in those cases.

ER 94, 97. This was a rebuke to McCormack's argument that he should face less than life because life imprisonment should only be reserved for crimes resulting in death.

The court also considered the "very predatory nature of defendant's conduct in this case" and his "encouraging other individuals to commit similar types of violent attacks on young children." ER 95-96. The district court also examined at length the section 3553(a) factors identified by both parties before imposing McCormack's sentence. ER 95-97.

McCormack asserts that the court's statements show a "clear error in judgment" or an error in weighing section 3553(a) factors. AOB at 53. Yet, McCormack does not point to mitigating circumstances that the court did not sufficiently weigh. The court's statements about McCormack's predatory conduct, his lack of

remorse, his choice of extraordinarily young victims, and his encouragement to others to commit violent crimes against the most vulnerable of society show why a Guidelines sentence of life was necessary not only to punish McCormack's crimes, but also to protect the public from McCormack in the future. McCormack's sentence is substantively reasonable.

## CONCLUSION

The government respectfully requests that this Court affirm the denial of McCormack's motion to exclude, affirm the convictions, and affirm the sentence.

Respectfully submitted,

PHILLIP A. TALBERT
Acting United States Attorney

/s/ Patrick R. Delahunty

PATRICK R. DELAHUNTY
Assistant United States Attorney

## STATEMENT OF RELATED CASES

The government is not aware of any related cases.

### CERTIFICATE OF COMPLIANCE

Pursuant to Ninth Circuit Rule 32(a)(5)(A), I certify that the

Answering Brief of the United States is proportionately spaced, has a

typeface of 14 points or more, and contains 12,499 words.


DATED: November 14, 2016     /s/ Patrick R. Delahunty
                                     PATRICK R. DELAHUNTY
                                     Assistant United States Attorney

**CERTIFICATE OF SERVICE**

When All Case Participants are Registered for the
Appellate CM/ECF System

I hereby certify that on November 14, 2016, I electronically

filed the foregoing with the Clerk of the Court for the United States

Court of Appeals for the Ninth Circuit by using the appellate

CM/ECF system.

I certify that all participants in the case are registered CM/ECF

users and that service will be accomplished by the appellate CM/ECF

system.

/s/ Patrick R. Delahunty
PATRICK R. DELAHUNTY
Assistant United States Attorney