## No. 15-10500

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

### UNITED STATES OF AMERICA

*Plaintiff – Appellee,*

v.

### SHAWN MCCORMACK,

*Defendant – Appellant.*

On Appeal from the United States District Court
for the Eastern District of California
D.C. No. 11-cr-00324-AWI
Honorable Anthony W. Ishii

## APPELLANT'S REPLY BRIEF

Johanna S. Schiavoni, Esq.
LAW OFFICE OF JOHANNA S. SCHIAVONI
3170 Fourth Avenue, Suite 250
San Diego, CA 92103
Tel: (619) 269-4046
Email: johanna@schiavoni-law.com

*Attorney for Appellant Shawn McCormack*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................1

REPLY ARGUMENT ...........................................................2

I. THE GOVERNMENT DOES NOT
PERSUASIVELY REFUTE THE UNFAIR
PREJUDICE ARISING FROM THE DISPUTED
VIDEOS AND IMAGES OR SHOW THAT IT
COULD NOT HAVE MADE ITS CASE
THROUGH ALTERNATIVE AVAILABLE
EVIDENCE..........................................................................2

    A. In Light of McCormack's Offered
Stipulation, the Evidence Was Not
Necessary to Prove His Identity, and Given
the Unduly Prejudicial Nature of the Child
Pornography Depicting Prepubescent
Minors, the Evidence Should Have Been
Excluded ...................................................................5

    B. The Government Fails to Meet Its Burden to
Establish That the Error in Admitting the
Videos and Photos Was Harmless .........................11

II. THE GOVERNMENT DOES NOT OVERCOME
THE DISTRICT COURT'S ABUSE OF
DISCRETION IN ADMITTING EXTENSIVE
EMAILS AND CHAT ROOM DISCUSSIONS
NOT RELATED TO THE CHARGED IMAGES ........13

    A. The "Other Acts" Evidence Is Not
Admissible as "Inextricably Intertwined"...........14

    B. The "Other Acts" Evidence Is Not
Admissible Under Rule 404(b)...............................16

    C. The Evidence Is Not Admissible Under Rule
414..............................................................................18

D. The Government Fails to Refute That, Even If Admissible Under Rule 404(b) or 414, the Evidence Did Not Pass the Rule 403 Balancing Under the *Glanzer* Factors..................19

E. The Error in Admitting the Emails and Chats Was Not Harmless .........................................19

III. THE GOVERNMENT DOES NOT ESTABLISH THE MISSING EVIDENTIARY OR JURISDICTIONAL LINKS REQUIRED TO SURVIVE A JUDGMENT OF ACQUITTAL ON EITHER COUNT 2 OR COUNT 6 .............................21

A. Regarding Count 2, The Only Authority Cited by the Government Describes Photographs Depicting a Sleeping Child Being Touched Sexually by an Adult; Here, There Was No Touching and There Was Insufficient Evidence That the Charged Photographs Depict Sexual Exploitation of a Child ........................................................................21

B. Regarding Count 6, the Government Fails to Close the Evidentiary Gap Required to Establish the Required Jurisdictional Elements.................................................................24

IV. THE GOVERNMENT IGNORES THE DISTRICT COURT'S FAILURE TO GIVE DUE (OR *ANY*) CONSDIERATION TO THE PARSIMONY PRINCIPLE, LEADING TO THE COURT'S CLEAR ERROR IN WEIGHING THE RELEVANT FACTORS AND IMPOSING A SUBSTANTIVELY UNREASONABLE SENTENCE .......................................................................28

CONCLUSION ........................................................31

ii

**CERTIFICATE OF COMPLIANCE** ....................................................**33**

**CERTIFICATE OF SERVICE**............................................................**34**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Gall v. United States,*
552 U.S. 38 (2007) ...............................................................28

*Old Chief v. United States,*
519 U.S. 172 (1997) ...................................................5, 10, 11

*Pepper v. United States,*
562 U.S. 476 (2011) .......................................................28, 31

*Doe ex rel. Rudy-Glanzer v. Glanzer,*
232 F.3d 1258 (9th Cir. 2000) ...........................................19

*United States v. Amezcua-Vasquez,*
567 F.3d 1050 (9th Cir. 2009) .....................................30, 31

*United States v. Carty,*
520 F.3d 984 (9th Cir. 2008) ..............................................28

*United States v. Dost,*
636 F.Supp. 828 (S.D. Cal. 1986) ......................................22

*United States v. Finley,*
726 F.3d 483 (3d Cir. 2013) ................................................22

*United States v. Ganoe,*
538 F.3d 1117 (9th Cir. 2008) .............................................10

*United States v. Izatt,*
480 Fed. Appx. 447 (9th Cir. 2012) (unpub. dispo.) ...........17

*United States v. Krupa,*
658 F.3d 1174 (9th Cir. 2011) ...............................................7

*United States v. Lemay,*
260 F.3d 1018 (9th Cir. 2001) .......................................18, 19

iv

*United States v. Levy,*
594 F.Supp.2d 427 (S.D. N.Y. 2009)....................................................22

*United States v. Lohse,*
797 F.3d 515 (8th Cir. 2015)......................................................21, 22

*United States v. Manning,*
56 F.3d 1188 (9th Cir. 1995)..............................................................17

*United States v. Merino-Balderrama,*
147 F.3d 758 (9th Cir. 1998)........................................ 5, 10, 11, 12, 20

*United States v. Morgan,*
748 F.3d 1024 (10th Cir. 2014).........................................................27

*United States v. Nader,*
542 F.3d 713 (9th Cir. 2008)..............................................................26

*United States v. Olhovsky,*
562 F.3d 530 (3d Cir. 2009) ........................................................30, 31

*United States v. Overton,*
573 F.3d 679 (9th Cir. 2009)..............................................................23

*United States v. Ramirez-Robles,*
386 F.3d 1234 (9th Cir. 2004)...........................................................16

*United States v. Thomas,*
92 Fed. Appx. 960, 2004 WL 765107 (4th Cir. Apr. 12, 2004)
(unpub. dispo.)..................................................................................22

*United States v. Trujillo,*
713 F.3d 1003 (9th Cir. 2013).....................................................30, 31

*United States v. Tsinnijinnie,*
91 F.3d 1285, 1289 (9th Cir. 1996)...................................................17

*United States v. Vizcarra-Martinez,*
66 F.3d 1006 (9th Cir. 1995)..............................................................15

v

## STATUTES

18 U.S.C. § 1201................................................................24, 25

18 U.S.C. § 1201(a)(1) ......................................................25, 26

18 U.S.C. § 2251(a) ..........................................................21, 23

18 U.S.C. § 3553(a) .......................................................28, 29, 30

18 U.S.C. § 3553(a)(2) ......................................................28, 29

## OTHER AUTHORITIES

Federal Rule of Criminal Procedure 29..................................27

Federal Rule of Evidence 403 .......................................... 3, 4, 5, 6, 13, 19

Federal Rule of Evidence 404(b)...........................4, 13, 14, 15, 16, 18, 19

Federal Rule of Evidence Rule 414.............................................. 4, 18, 19

## INTRODUCTION

Appellant Shawn McCormack did not receive a fair trial. His convictions were based upon the erroneous admission of extensive evidence where the evidence's unfair prejudice substantially outweighed its probative value, and much of which was inadmissible as propensity evidence. In addition, McCormack's sentence of life in prison on two kidnapping counts, and 360-months on four counts of production of child pornography, reflected an error in the district court's judgment in that the court did not consider the fundamental principle of parsimony in imposing these sentences.

Based on these errors, and as discussed more fully in his opening brief, McCormack respectfully requests that this Court reverse his conviction and direct the district court to enter a judgment of acquittal as to Counts 2 and 6. Alternatively, and as to all counts, McCormack requests that the Court vacate his convictions and remand for a new trial. Also in the alternative, McCormack requests that the Court vacate his sentence and remand for re-sentencing.

1

# REPLY ARGUMENT

## I.  THE GOVERNMENT DOES NOT PERSUASIVELY REFUTE THE UNFAIR PREJUDICE ARISING FROM THE DISPUTED VIDEOS AND IMAGES OR SHOW THAT IT COULD NOT HAVE MADE ITS CASE THROUGH ALTERNATIVE AVAILABLE EVIDENCE

McCormack consistently has maintained that he would stipulate to every element of the charged offenses except that he was in fact the perpetrator depicted in, and who produced, the charged images in counts 1-4.  ER[1] 44-46; 46-47; 166; 208-11; Appellant's Opening Brief ("AOB") at 6, 8, 14-17.  It was the government's contention (not McCormack's) that his stipulation was insufficient to cover the knowledge/*scienter* element of Counts 1 through 4.  Answering Brief of the United States ("Opp.") at 12 (citing ER 52).  The district court followed the government's theory and concluded that the element of knowledge/*scienter* could not be included in the stipulation if there remained a dispute over identity of the perpetrator.  ER 56; *see* AOB at 12 (discussing same).

---

[1]  "ER" refers to Appellant's Excerpts of Record, filed herewith.  PSR refers to the Pre-Sentence report filed under seal concurrent with this brief.

2

McCormack objected to the disputed evidence (images and videos, and the redacted versions of the same) on the grounds that the probative value of the evidence substantially outweighed by the danger of unfair prejudice arising from its admission. Fed. R. Evid. 403; AOB at 6-7 (citing exhibits), 12-13; Opp. at 18 n. 1 (citing redacted versions of Exhibits). The district court acknowledged, as have other courts, that it was "obvious[]" that the images of child pornography would substantially inflame and upset jurors—particularly the videos. ER 14. Nevertheless, the district court overruled McCormack's objections and allowed *all* of the disputed evidence to be admitted at trial. ER 56.

As to the issue of admissibility, the government argues that all of the evidence it introduced, including the disputed videos and images, was *necessary to prove the identity* of McCormack as the producer of the videos and images. Opp. at 19-35. Yet, as to harmless error, the government contends that its case was very strong even without the evidence, and thus it would have prevailed and any error in admission was harmless. Opp. at 39-40. On their face, those positions are inconsistent, and expose the truth that the disputed videos and images depicting child pornography involving prepubescent children did not

3

need to be admitted for the government to try its case. As is detailed in the opening brief, and further below, the district court erred in admitting this evidence where the probative value of the evidence was *substantially outweighed* by what the district court even acknowledged, ER 14, would substantially inflame and upset jurors of ordinary sensibilities. Fed. R. Evid. 403.

As an initial matter, in responding to the government's arguments, McCormack notes that the government's brief conflates its analysis of the *charged* videos and images that visually depict child pornography objected to on Rule 403 grounds and argued in Argument I in the opening brief, AOB 6-19, with the *uncharged* emails and chat logs objected to on Rule 404(b), 414, and Rule 403 grounds and argued in Argument II in the opening brief. AOB 19-33. In his reply, McCormack continues to address the charged videos and still images first, and will separately address the uncharged emails and chat logs second.

**A.    In Light of McCormack's Offered Stipulation, the Evidence Was Not Necessary to Prove His Identity, and Given the Unduly Prejudicial Nature of the Child Pornography Depicting Prepubescent Minors, the Evidence Should Have Been Excluded**

The opening brief sets forth the relevant standards governing a district court's exercise of discretion regarding the admissibility of evidence objected to on grounds of unfair prejudice under Rule 403. AOB at 10.  What is clear is that a defendant's offer to stipulate to certain elements of an offense must be considered when conducting the Rule 403 balancing, and admission of less prejudicial substitutes for the disputed evidence may be required.  *Old Chief v. United States*, 519 U.S. 172, 182-83 (1997); *United States v. Merino-Balderrama*, 147 F.3d 758, 762-63 & n.3 (9th Cir. 1998) (district court "must" factor offer to stipulate to offense element and available substitutes into its Rule 403 analysis).

In *Merino-Balderrama*, the Ninth Circuit held that the district court abused its discretion in admitting videos depicting child pornography, over the defendant's offers to stipulate to the pornographic content of the films, and that the error was not harmless in light of the unfairly prejudicial effect of evidence.  146 F.3d at 761-63.

5

The government seeks to disguising *Merrino-Balderrama* because, it contends, that the government in that case had a viable alternative to showing the videos of child pornography in that it could simply have admitted the box cover to establish its pornographic content. Opp. at 34-35. However, the case is not so easily distinguishable from McCormack's—as discussed below, the government here did have alternative evidence with which to present its case. It did not *need* to admit at trial and publish to the jury material that was so highly inflammatory that the district court predicted it would be upsetting to the jurors, and indeed, it sent juror 12 into audible gasps and visible crying. AOB at 7-8; ER 14.

The government argues that the images in count 1 were probative of McCormack's guilt because they allowed the jury to compare the photos of Elizabeth to photos of McCormack's truck. Opp. at 20. However, as the government itself acknowledges, one of the images even shows prepubescent Elizabeth being anally raped by an adult perpetrator, Opp. at 20—without a doubt an unfairly prejudicial image. *See* Fed. R. Evid. 403, Adv. Comm. Notes to 1972 Proposed Rules (noting that under Rule 403, "unfair prejudice" means "an undue

tendency to suggest decision on an improper basis, commonly . . . an emotional one.").

Evoking additional unfair prejudice were the images and videos introduced on Counts 2 through 4. Among these images were of Ben sleeping in his crib and an exposed, erect male penis hovering over him (Count 2); three videos and an image depicting an adult male sexually assaulting infant Ben and urinating on him in a bathtub (Count 3); and four still images of Ben laying on a blanket on grass, with his genitals exposed in two of the photos and an erect adult male penis also included in the photo frame (Count 4). Opp. at 22, 23-24, 25. The nature of the images and videos themselves, depicting child pornography with prepubescent children, facially demonstrates their unfair prejudice. *See United States v. Krupa*, 658 F.3d 1174, 1186 (9th Cir. 2011) (Berzon, J., dissenting) ("I fear that understandable abhorrence of [child pornography] can infect judicial judgment").

The government argues that these images were necessary on the issue of identity because of evidence depicted in the images and videos, including clothing and depictions of the hotel room where the videos were filmed, which the government sought to tie to McCormack through

7

other evidence.  Opp. at 22, 23-24, 25.  However, the images and videos

themselves were not *necessary* to prove McCormack's identity, and the

opening brief identified specific alternative available evidence that the

government could have—and did use—to establish that McCormack

produced the sexually explicit images at issue.  AOB at 15-17 (detailing

other available evidence).

As the opening brief spells out in detail, the government had

plenty of alternative, un-objected to evidence through which to prove

the charges.  For example, the government introduced evidence in the

form of exhibits and testimony through Toronto police department, who

engaged in extensive GigaTribe chats with McCormack as "Toddlers,"

downloaded videos and images from "Toddlers, and testified extensively

about those exhibits.  AOB at 16 (citing record).  The government also

introduced evidence that the IP (internet protocol) address associated

with communications related to the videos and images.  *Id.*

The government had evidence based on the contemporaneous

investigation by the Department of Homeland Security in Boston into

the images and videos charged in counts 2 through 4, and which

investigation focused on identifying the location of the filming of the

"swirl carpet series" video, and using audio and visual clues from the videos and images to do so. AOB at 16 (citing record). The government also had hotel registration and identification documentation and testimony from the former co-owner of the California Best Inn, the hotel where the "swirl carpet series" video was made. *Id.* And, there was evidence that child pornography was found on a laptop computer owned by McCormack and email accounts used by McCormack. AOB at 17 (citing record).

As the opening brief points out, all of this evidence was significantly more probative of identity than the content of the disputed videos and images themselves. AOB at 16-17 & n.5. The government's argument that it *needed* to introduce the disputed videos and images—depicting the rape of a toddler, and exposure of another prepubescent child's genitalia—to establish the identity of the perpetrator simply does not pass muster upon close examination of the record. (Indeed, as noted above, the government's own harmless error argument posits that its other evidence was extremely probative of McCormack's guilt and that removal of the dispute evidence did not, in the government's view, reduce their chance of obtaining a conviction. Opp. at 39.)

9

In his opening brief, McCormack also argues that the district court misapplied the law, construing it so that the images and videos had to be admitted unless McCormack stipulated to *every single* element of the offense.  But that is called a guilty plea.  Plainly, under *Merino-Balderrama*, 146 F.3d at 761 and *Old Chief*, 519 U.S. at 187-91, and *Ganoe*, 538 F.3d at 1123-24 that was not required.  The government's brief does not respond to, or rebut, this incorrect application of the law to McCormack's case.  *Compare* AOB at 13-14, *with* Opp. at 27-38.

McCormack did not seek to "scrub the trial clean of all evidence that may have an emotional impact" as the government asserts, Opp. at 27 (quoting *United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir. 2008)).  Rather, McCormack simply sought to obtain a fair trial.

Moreover, the factual situation in *Ganoe* is distinguishable from the present case, because in *Ganoe,* the defense argued that the defendant did not *knowingly* possess child pornography because "one could mistakenly download such files thinking they were adult pornography or otherwise legal."  538 F.3d at 1123.  McCormack did not assert such a defense in his case; he instead disputed that he was the

perpetrator depicted in, or who produced, the charged images and videos. AOB at 13-14. Thus, *Ganoe*'s approach does not apply here.

Considered together with McCormack's proposed stipulations, the government had at its disposal evidence to tell a compelling story, with complete "chapters," *Old Chief,* 519 U.S. at 186-87, without using the disputed videos and images. The district court abused its discretion in permitting the government to introduce the videos films and still images. *E.g., Merino-Balderrama*, 146 F.3d at 763. McCormack's convictions must be reversed.

## B. The Government Fails to Meet Its Burden to Establish That the Error in Admitting the Videos and Photos Was Harmless

The government does not dispute that it bore the burden to prove that the erroneous admission of evidence was harmless. *Merino-Balderrama*, 146 F.3d at 763; AOB at 18; Opp. at 39. The opening brief details the emphasis the government placed on the disputed videos and images at trial. AOB at 18. Use of the videos and still images clearly played to the jury's emotional response to their horrific contents. AOB at 7-8 (discussing juror 12's visible gasping and sobbing as the videos were played and noting that juror 12 became the jury's foreperson). The

11

undue prejudice that resulted from admitting them "significantly reduced any possibility that the jury would acquit" McCormack, and thus was not harmless. *Merino-Balderrama*, 146 F.3d at 763.

Nor does the government persuasively distinguish the closely analogous case of *Merino-Balderrama*, in which case the Ninth Circuit vacated the defendant's conviction for possession of child pornography. 146 F.3d at 763-64. In that case, the court held that the erroneous admission of evidence was not harmless in light of inflammatory and severely prejudicial nature of videos screened for jury depicting child sexual abuse, which evidence "likely created an emotional impact that influenced the verdict." *Id.* at 763. That, coupled with government's repeated references to the disputed evidence in closing argument, rendered its admission not harmless. *Id.* at 763-64. The government does not address *Merino-Balderrama* anywhere in its harmless error discussion. *See* Opp. at 39-40.

In sum, the evidence erroneously admitted here was unduly prejudicial, was not harmless, and infected the convictions on each count, requiring reversal and remand for a new trial. *E.g., Merino-Balderrama*, 146 F.3d at 763-64; AOB at 19.

12

## II. THE GOVERNMENT DOES NOT OVERCOME THE DISTRICT COURT'S ABUSE OF DISCRETION IN ADMITTING EXTENSIVE EMAILS AND CHAT ROOM DISCUSSIONS NOT RELATED TO THE CHARGED IMAGES

The opening brief also identifies significant email and chat log evidence, admitted over McCormack's objection, which was improper "other acts" evidence that did not qualify not qualify under Federal Rules of Evidence 404(b) or 414, and which in any event should have been excluded under Rule 403. AOB at 19-33.

The objected-to evidence is discussed in detail in the opening brief at pages 20 to 22. In sum, it largely reveals chats and emails in which the author "Toddlers" (a screen name associated with McCormack, ER 919) describes his desires to have sexual contact with very young children, and his actual contact with a young boy and girl of which he has private pictures; his like of young children depicted in diapers or being peed on; and other expressions of sexual interactions with young children, in addition to the author's interest in sharing and viewing child pornography. AOB at 20-22 (citing record).

The government's first response is that the evidence does not involve "other acts," but instead is "direct evidence" of the crimes

charged. Opp. at 40. This argument refers to the government's previous discussion of the evidence as proving McCormack's "identity" as the perpetrator. *See* Opp. at 20-21 (discussing emails and chats relating to Count 1); *id.* at 22-23 (discussing emails and chats relating to Count 2); *id.* at 24-25 (discussing emails and chats relating to Count 3); *id.* at 25 (discussing emails and chats relating to Count 4); *id.* at 26-27 (discussing emails and chats relating to Counts 5 and 6).

However, as even the government's discussion of each of the pieces of evidence reveals, the evidence included emails and chats that relate to subjects *other* than the particular videos and images that form the basis of the charges in counts 1 through 4, or the kidnapping event in Counts 5 and 6, and instead, relate to *other* events. *See* AOB at 20-22. This is classic, prohibited propensity evidence, and no ground for admissibility is shown under Rule 404(b) or 414. AOB at 22-26 (arguing same).

## A. The "Other Acts" Evidence Is Not Admissible as "Inextricably Intertwined"

The government contends that the email and chat log evidence is admissible because it is "inextricably intertwined" with evidence of the charged crimes. Opp. at 41. First, it is worth noting that the Ninth

14

Circuit applies the "inextricably intertwined" exception to Rule 404(b) narrowly. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995).

In *Vizcarra-Martinez,* the Ninth Circuit reversed a conviction due to evidence of the defendant's personal use of methamphetamine was admitted over objection in a methamphetamine manufacturing case. *Id.* This Court held that there "must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *Id.* at 1013.

Here, the government makes only the most cursory argument that "the evidence was necessary to permit the government to offer a coherent story of the crimes and, in particular, who committed the crimes." Opp. at 42. Yet, as detailed above, the government had other evidence through which it could seek to establish McCormack's identity. *Supra* at 6, 8-9. It has not made a sufficient showing that the disputed emails and chat logs were admissible under this Court's narrowly applied construction of the inextricably intertwined doctrine. *E.g., Vizcarra-Martinez*, 66 F.3d at 1012-13.

15

**B.    The "Other Acts" Evidence Is Not Admissible Under Rule 404(b)**

Next, the government contends that the disputed emails and chat logs were admissible under Rule 404(b).  Opp. at 43 (citing *United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004)).  However, as the opening brief points out, the emails and chat room discussions *unrelated* to the charged images do not prove a material point in the case.  AOB at 24.  Specifically, the government does not answer McCormack's contention that the disputed emails and chat room discussions with unknown third parties on the general topic of child pornography, or his interest in websites that may deal with child pornography, do not necessarily prove his *production* of such material.  AOB at 22.  And, that other act evidence of discussions regarding McCormack's abstract interests is not sufficiently probative of the charged offenses to be admissible.  AOB at 22; *see, e.g., United States v. Ramirez-Robles*, 386 F.3d 1234, 1243 (9th Cir. 2004) (holding that district court abused its discretion in admitting evidence of defendant's prior conviction of user quantity of drugs in prosecution to prove conspiracy and possession with intent to distribute offenses).

16

Next, the government argues that the other acts evidence "largely relate[s] to the same time period charged in the indictment, which is January 2007 to July 2010." Opp. at 43. But, as the opening brief demonstrates, the other act evidence is in fact too remote in time, in that emails and chats that purportedly took place in March 2010, June 2010, February 2011, and May 2011, occurred months, and even years, *after* the charged conduct. AOB at 24-25. The government cites three cases purporting to authorize admission of "remote in time" other acts evidence. Opp. at 44. But in each of the cited cases—*United States v. Izatt*, 480 Fed. Appx. 447, 450 (9th Cir. 2012) (unpub. dispo.), *United States v. Tsinnijinnie*, 91 F.3d 1285, 1289 (9th Cir. 1996), *United States v. Manning*, 56 F.3d 1188, 1197 (9th Cir. 1995)—the evidence was of "other acts" that occurred *prior* to the charged offenses, and not months or years *after* the charged acts. The government has cited no case analogous to what it seeks to do here.

Next, the government argues that the acts are similar to the offense charged "in that they relate to the comments on and distribution of the charged images and tie McCormack to the crime scenes" and "show McCormack was behind the computer and email accounts making

17

incriminating statements." Opp. at 44. However, the emails and chats logs arguably showed *other instances* of McCormack attempting to or acquiring child pornography, or discussing issues having to do with the subject of child sex. AOB at 25-26. These general discussions are not probative of his being the *producer* of the charged material and are not sufficiently probative of that activity to be admissible under Rule 404(b). *Id.*

## C. The Evidence Is Not Admissible Under Rule 414

McCormack's opening brief sets forth detailed arguments regarding why the disputed emails and chat logs were not admissible under Rule 414, including anticipating each of the arguments raised by the government and addressing the only case cited by the government, *United States v. Lemay*, 260 F.3d 1018, 1026 (9th Cir. 2001). AOB 26-28. The government, by contrast, fails to address the additional case authority identified by McCormack, showing that application of Rule 414 in this case is not appropriate. AOB at 27-28 (citing cases). Since the government has not addressed those arguments, and McCormack already has thoroughly set forth his position, he will not repeat it here

18

except to note that admission of evidence under Rule 414 remains

subject to Rule 403 prejudice analysis. *LeMay*, 260 F.3d at 1026.

**D. The Government Fails to Refute That, Even If Admissible Under Rule 404(b) or 414, the Evidence Did Not Pass the Rule 403 Balancing Under the *Glanzer* Factors**

McCormack's opening brief argues in detail that the disputed

"other acts" evidence is not admissible under Rule 403's balancing test

when viewed through the lens of the five factors set forth in *Doe ex rel.*

*Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000). AOB at

28-32. The government's brief overlooks *Glanzer* and posits no response

to McCormack's arguments or the additional authority cited in the

opening brief. *Compare* AOB at 28-32, *with* Opp. at 40-46. Accordingly,

McCormack does not repeat his arguments here.

**E. The Error in Admitting the Emails and Chats Was Not Harmless**

McCormack separately argued the prejudice arising from

admission of the challenged emails and chats, particularly given the

prosecutor's focus on arguing that McCormack "admitted" in the emails

and chat logs that he sexually abused Elizabeth and Ben, and that he

"admitted" that he took Ben to a hotel, that he was the "masked" guy,

and that he raped Ben. AOB at 33 (citing record). Admission of this

evidence was prejudicial and not harmless, particularly in light of the number of times and emphasis that government counsel placed on this evidence, showing its importance to the government's case and the devastating effect to McCormack's own defense. AOB at 33-34 (discussing *Merino-Balderrama*, 146 F.3d at 763-64). The government does not respond to any of these arguments, *see* Opp. at 39-46, other than to argue generically that "[t]here was additional evidence offered by the government that was probative of his guilt." *Id.* at 39. For the same reasons set forth above, the government's arguments fail to meet its burden to establish that the district court's error in admitting the emails and chats was harmless. *Supra* at 11-13; AOB at 33-34.

This Court should reverse the convictions on counts 1 through 4, and count 5—the kidnapping offense related to the March 2009 "swirl carpet series" video, which depends on the same evidence of identification as with count 3. AOB at 34.

III.  **THE GOVERNMENT DOES NOT ESTABLISH THE MISSING EVIDENTIARY OR JURISDICTIONAL LINKS REQUIRED TO SURVIVE A JUDGMENT OF ACQUITTAL ON EITHER COUNT 2 OR COUNT 6**

A.  **Regarding Count 2, The Only Authority Cited by the Government Describes Photographs Depicting a Sleeping Child Being Touched Sexually by an Adult; Here, There Was No Touching and There Was Insufficient Evidence That the Charged Photographs Depict Sexual Exploitation of a Child**

As discussed in the opening brief, the four images charged in Count 2 depict Ben, fully clothed in his crib, sleeping on his side in fetal position, with no unusual body exposure or posture.  AOB at 35-36 (citing ER 620-22; *see* Exhs. 35-40 (photos and redacted versions of each charged image)).  The photos also depict in the same frame an erect adult male penis, which appears to be hovering above Ben at a distance of several inches or more, but not making any contact with Ben.  *See id.*

The government contends that the evidence was sufficient to sustain a conviction under 18 U.S.C. § 2251(a).  Opp. at 48-51.  The government relies on *United States v. Lohse*, 797 F.3d 515, 522-23 (8th Cir. 2015).  In that case, the charged images depicted a sleeping child clothed in pajamas while a naked adult male straddled the child, placing his penis near her mouth while touching her hair or placing his penis near her eye while touching her face.  *Id.* at 521-22.  *Lohse* is

21

similar in this regard to each of the other three federal cases cited in

the opening brief (and not addressed by the government), all of which

contained evidence that a sleeping child was being touched in a sexually

explicit manner in the images or videos.  AOB at 39-40 (discussing

*United States v. Finley*, 726 F.3d 483, 489, 494-95 (3d Cir. 2013); *United*

*States v. Levy*, 594 F.Supp.2d 427, 430-31 (S.D. N.Y. 2009); *United*

*States v. Thomas*, 92 Fed. Appx. 960, 2004 WL 765107, at *1 (4th Cir.

Apr. 12, 2004) (unpub. dispo.)).  Each of these cases, in addition to

*Lohse,* is distinguishable from the evidence here in which the charged

photographs depict a sleeping child unaware of or involved in any

activity depicted, and where there is no depiction of the touching of Ben.

Nor does examination of the factors from *United States v. Dost*,

636 F.Supp. 828, 832 (S.D. Cal. 1986), change the analysis here.  The

*Dost* factors (instructed by the trial court at ER 309 and discussed at

AOB at 37-38) largely do not apply:  factors 1-5 do not apply, because

the focus on the image is not on the minor's genital or pubic area, the

setting in the crib is not sexually suggestive, the minor is not depicted

in an unnatural pose or in inappropriate attire, and the sleeping child

does not convey sexual coyness or willingness to engage in sexual

22

activity.  Factor 6, the only remaining potentially applicable factor,
whether the image is intended to elicit a sexual response in the viewer,
is the only factor potentially invoked by the evidence here.  Opp. at 50
(citing *United States v. Overton,* 573 F.3d 679, 688 (9th Cir. 2009)).  Yet,
as discussed, no cases stretch the statute this far on a case with
evidence similar to the present one.  AOB at 38-39; *cf. Overton,* 573 F.3d
at 689 (evidence was sufficient to sustain § 2251(a) conviction where
defendant took hundreds of photographs of minor as "throughout the
family's home . . . in assorted poses with varied backdrops," defendant
"told" minor how to pose and "made" her do so).

Given that all of the cited authority involving a sleeping child who
was unaware of any participation in the image taken required some
form of touching (which was absent here), and where there was no
evidence here that Ben was directed to be posed in a certain manner,
the evidence was insufficient as a matter of law to satisfy the second
element of the § 2251(a) charge.  AOB at 37-41.  This Court should
vacate the conviction on this count and direct the district court to enter
a judgment of acquittal.

**B.      Regarding Count 6, the Government Fails to Close the Evidentiary Gap Required to Establish the Required Jurisdictional Elements**

The government contends that it sufficiently established the jurisdictional element of the 18 U.S.C. § 1201 kidnapping offense in two ways: (1) it offered evidence that McCormack traveled from Colorado (where McCormack lived) to California (where Ben lived) before the offense occurred, and separately, (2) that McCormack used a telephone (a facility or instrument in interstate commerce) in commission of the offense.  Opp. at 51-53.

On appeal, the government has abandoned a third argument it advanced below (and addressed in the opening brief), in which the government argued that the police calling McCormack using Andrew's cell phone on the night of the offense was sufficient use of a "communication facility."  ER 77 (arguing same to district court); Opp. at 55-56 (not arguing this theory on appeal, and expressly stating that it only asserts the two theories noted above).

As to the government's point that McCormack's own travel was sufficient, the government contends that under a 2006 amendment to

24

§ 1201(a), it has sufficiently proven jurisdiction because McCormack lived in Colorado but the offense occurred in California, he therefore crossed state lines himself before committing the charged offense. Opp. at 53.[2] Despite that the law was amended more than ten years ago, the government does not cite a single case interpreting the amended § 1201 as broadly as it seeks application here—*i.e.,* based on a defendant's mere interstate movements wholly separate from and before commission of the charged offense.

The evidence here showed only that McCormack lived in Colorado, and that the offense occurred in California. AOB at 41-42 & n.41, 45-46 (citing record). The government does not persuasively identify evidence that McCormack traveled interstate with intent to commit, or in order to commit, a kidnapping of Ben, as opposed to for another reason, including to visit his high school friend Andrew. *See* Opp. at 53-54.

---

[2] Although the government contends that McCormack ignores the relevant statutory language on appeal, Opp. at 52, the opening brief cites the complete jury instruction given, based on the current form of § 1201, and discusses the government's failure to prove the statutory jurisdictional elements under the current statutory construction. AOB at 42-43 (quoting jury instruction); *id.* at 45-46 (arguing that evidence failed to meet jurisdictional requirements based on evidence of McCormack's movements).

25

As to the second theory, the government relies on evidence that McCormack "used a telephone to gain access to Ben." Opp. at 55. To invoke the "use" portion of the statute as the jurisdictional hook, the government must prove that McCormack used a "facility or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1); ER 310 (jury instruction); AOB 43.

McCormack does not dispute that a telephone is a communications facility under Ninth Circuit law. *See United States v. Nader,* 542 F.3d 713, 722 (9th Cir. 2008). However, as the opening brief discusses, the evidence does not match up to the government's theory that it established McCormack "used" a telephone in committing or in furtherance of the offense. Andrew testified in detail about McCormack's visit in November 2009, but did *not* testify that McCormack called him prior to the November 2009 visit to make plans. AOB at 46-48 (analyzing trial testimony, citing ER 847-49, 849, 853-54, 855-56). Nor did McCormack testify that he called Andrew before the November 2009 visit. ER 903. The government's claim that the record supports use of a telephone in the commission, or in furtherance of, the

charged kidnapping is not supported by the record. Opp. at 55-56.

Here, despite the opening brief's detailed recitation of the evidence, the

government does not show otherwise. Opp. at 55-56. The evidence does

not show a telephone was used during the charged kidnapping, or

beforehand (i.e., in furtherance). *Cf., e.g., United States v. Morgan,* 748

F.3d 1024, 1029-30 (10th Cir. 2014) (evidence that defendants used a

GPS monitoring device on the victim's car to track his movements

leading up to the kidnapping, and that immediately before and during

the kidnapping, members of the conspiracy used cell phones

communicate about the kidnapping).

Because there was insufficient evidence of any jurisdictional

element, the district court erred in denying McCormack's motion for a

judgment of acquittal on Count 6. AOB at 46-49; Fed. R. Crim. Proc.

29. This Court should vacate the conviction and remand with

instructions to enter a judgment of acquittal on that count.

**IV.    THE GOVERNMENT IGNORES THE DISTRICT
COURT'S FAILURE TO GIVE DUE (OR *ANY*)
CONSDIERATION TO THE PARSIMONY PRINCIPLE,
LEADING TO THE COURT'S CLEAR ERROR IN
WEIGHING THE RELEVANT FACTORS AND IMPOSING
A SUBSTANTIVELY UNREASONABLE SENTENCE**

The opening brief details the principles that govern a district

court's exercise of its sentencing discretion, including the sentencing

factors under 18 U.S.C. § 3553(a) (hereafter, "§ 3553(a)").  AOB at 49-

52.  Among the most important of those factors is § 3553(a)(2)'s

parsimony principle.  AOB at 49-50.  The Supreme Court has made

clear that "the District Court's *overarching duty* [is] to impose a

sentence sufficient, but not greater than necessary to serve the

purposes of sentencing." *Pepper v. United States*, 562 U.S. 476, 491

(2011) (emphasis added); AOB at 49-50 (discussing parsimony principle

and citing other cases).  A sentencing court also must make an

"individualized" sentencing decision and should not overweight the

Guidelines factor.  *Gall v. United States*, 552 U.S. 38, 50 (2007); *United

States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008); AOB at 51.

The government contends that McCormack does not address *how*

the district court erred in weighing the sentencing factors.  Opp. at 59-

60.  Not so.  The government apparently overlooks McCormack's central

28

sentencing argument—*i.e.,* that the district court's failure to consider the parsimony principle, and resulting erroneous weighing of the § 3553(a) factors, led to the unreasonable sentence imposed. AOB at 52-54.

Before the district court, McCormack requested a sentence of 300 to 360 months as being "just and reasonable" in light of the crimes of conviction, but a sentence that also "would at least provide[s] a prospect of a life after incarceration." ER 84-85. On appeal, McCormack argues that the district court gave no real consideration to—and made no finding that—the sentence imposed was "sufficient, but *not greater than necessary*," to serve the statutory sentencing purposes. 18 U.S.C. § 3553(a)(2); AOB at 52; *see* ER 89-98. McCormack also argues that the court "failed to explain why a life sentence was necessary, and anything less would be insufficient." AOB at 52. And finally, he contends that this failure paved the way for the court's clear error of judgment in weighing the sentencing factors that the court did consider. AOB at 52-53.

Specifically, the court overweighted the Guidelines range of "life," and—again—failed to consider whether a life sentence was "*greater*

29

*than necessary*." AOB at 52-53; *see* ER at 91-92, 98; *e.g.*, *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1057 (9th Cir. 2009) (vacating sentence as substantively unreasonable where "the district court applied the Guidelines sentence without considering the defendant-specific facts that made the resulting sentence unreasonable under § 3553(a)"). In light of the court's omission of any consideration of the "overarching" parsimony principle, the court's sentence of life imprisonment on counts 5 and 6, and 360 months on counts 1-4, was substantively unreasonable. *E.g., Amezcua-Vasquez*, 567 F.3d at 1054-58; *see United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013) (vacating sentence where district court did not consider defendant's nonfrivolous sentencing arguments).

In *United States v. Olhovsky*, 562 F.3d 530 (3d Cir. 2009), the defendant was convicted of possession of child pornography. *Id.* The Third Circuit vacated a below-Guidelines sentence (six years in custody) after finding procedural sentencing error because the district court failed to consider some sentencing factors—including the parsimony principle—and erred in weighing other factors, which led the court to impose a substantively unreasonable sentence. *Id.* at 547-48, 550-53

30

(sentencing court's failure to address defendant's mitigation arguments, "reinforce[s] our concern that the court was so offended by the nature of [defendant]'s conduct that it sentenced the offense at the expense of determining an appropriate sentence for the offender"). In addition to skirting the substance of McCormack's sentencing challenges, the government fails to cite or discuss the authority raised in the opening brief—including *Pepper, Amezcua-Vasquez, Trujillo,* or *Olhovsky*. *Cf.* AOB at 50-53, *with* 90-93.

Close examination of the district court's sentencing decision here leads inexorably to the conclusion that the court's sentence of life imprisonment on counts 5 and 6, and 360 months on counts 1-4, was substantively unreasonable and must be vacated.

## CONCLUSION

For the reasons addressed above and in his opening brief, McCormack respectfully requests that this Court reverse his convictions on counts 2 and 6 and direct the district court to enter a judgment of acquittal on those counts. Alternatively, and as to all counts, McCormack requests that this Court vacate his convictions and remand

31

for a new trial.  Also in the alternative, McCormack requests that the

Court vacate his sentence and remand for re-sentencing.


Dated: January 27, 2017      Respectfully submitted,


_s/ Johanna S. Schiavoni_
JOHANNA S. SCHIAVONI

LAW OFFICE OF JOHANNA S. SCHIAVONI
*Attorney for Appellant Shawn McCormack*

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a) and Ninth Circuit Rule 32-1, I certify that the accompanying opening brief is within the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,027 words, exclusive of the table of contents, table of authorities, signature lines, and certificates of service and compliance, as counted by the word count program of Microsoft Word.

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief is prepared in a proportionally spaced typeface using 14-point Century Schoolbook font.

Dated: January 27, 2017    Respectfully submitted,

*s/ Johanna S. Schiavoni*
By: Johanna S. Schiavoni

LAW OFFICE OF JOHANNA S. SCHIAVONI

## CERTIFICATE OF SERVICE

Ninth Cir. Case No. 15-10500

E.D. Cal. Case No. 11-cr-000324-AWI-BAM-1

I certify that on January 27, 2017, I filed the foregoing

**APPELLANT'S REPLY BRIEF** via the Ninth Circuit's Appellate

CM/ECF system, and that all parties are registered participants in

Appellate CM/ECF.

*s/ Johanna S. Schiavoni*
Johanna S. Schiavoni